THE ELMIRA SAVINGS BANK, Plaintiff, *v.* CHARLES DAVIS, as Receiver, etc., Defendant.

73  357
142a 590

*National banks — subject to State legislation — section* 130 *of chapter* 689 *of the Laws of* 1892 — *applies to National banks.*

National banks are subject to State legislation and are governed thereby, except where such legislation is in conflict with the act of Congress, or where it tends to impair or destroy the utility of said banks as agents of the United States, or interferes with the purposes of their creation; and it is only when the State law incapacitates them from discharging their duties to the government that it becomes unconstitutional.

Section 130 of chapter 689 of the Laws of 1892 applies to National as well as to State banks, and is not in conflict with the provisions of the United States statutes, which provide for a *pro rata* distribution of the assets of an insolvent National bank, and prohibit it from making preferences.

SUBMISSION of a controversy on an agreed statement of facts under section 1279 of the Code of Civil Procedure.

The question in difference is stated in the submission as follows :

" Whether the said the Elmira Savings Bank is entitled to recover judgment against the said Charles Davis, as receiver of the Elmira National Bank, for the sum of forty-two thousand seven hundred and four and sixty-seven-hundredths ($42,704.67) dollars, with interest thereon from May 23, 1893, as a preferred creditor of the said the Elmira National Bank, with costs, recoverable out of any funds which may come into his hands as such receiver applicable thereto, and whether the said Charles Davis, as receiver of said National bank, shall, after the payment of its circulating notes, if it has any, has been provided for, apply all the property of the said National bank, in the first place, to the payment in full of any sum or sums of money deposited in said National bank by the said the Elmira Savings Bank, as provided under section 130 of the Banking Law of the State of New York, being chapter 689 of the Laws of 1892, or whether the said the Elmira Savings Bank shall be considered as a general creditor of the said the Elmira National Bank, and entitled only to its *pro rata* dividend of the assets of the said the Elmira National Bank."

The following is the statement of the facts :

" 1. That at the times hereinafter mentioned, the said the Elmira

Savings Bank was and still is a domestic savings bank corporation, organized and incorporated under and by virtue of the laws of the State of New York, having its banking office in the city of Elmira, Chemung county, New York.

" 2. That the said the Elmira National Bank is a bank organized under the sections of the Revised Statutes of the United States which authorize the organization of National banking associations, approved June 22, 1874, and of subsequent acts in addition to and amendatory thereto, having its banking office in said city of Elmira, and that the said the Elmira National Bank became insolvent, closed its doors and ceased to transact business upon the 23d day of May, 1893.

" 3. That the said Charles Davis heretofore and on the 24th day of May, 1893, was duly appointed receiver of the said the Elmira National Bank, insolvent, by the Comptroller of the Currency of the United States, duly authorized thereto, and on the 2d day of June, 1893, the said Charles Davis duly qualified and entered upon the discharge of the duties of his trust as such receiver, and said receivership is still pending undischarged, and the said Davis is in the possession of all the property of the said insolvent bank, as such receiver.

" 4. That upon the said 23d day of May, 1893, the said the Elmira Savings Bank had on deposit and to its credit in the said the Elmira National Bank, at the time when the same became insolvent, the sum of $42,704.67, the same having been deposited in said National bank in the usual course of business, and between the 1st day of November, 1890, and the 15th day of May, 1893, both inclusive, and the amount of said deposit did not and does not exceed the amount authorized to be so deposited by the said the Elmira Savings Bank in the said the Elmira National Bank by the provisions of chapter 689 of the Laws of 1892 of the State of New York.

" 5. That the payment of all the circulating notes of the said the Elmira National Bank, insolvent, has been provided for.

" 6. That the said Charles Davis, as such receiver as aforesaid, has in his possession property of said insolvent bank, consisting of money, exceeding the amount of $42,704.67, and interest thereon from May 23, 1893.

" 7. That the said the Elmira Savings Bank has duly and upon June 7th, 1893, demanded from the said Charles Davis, as such receiver as aforesaid, the payment of said sum of $42,704.67, and interest thereon from said May 23, 1893, and that the said deposit be recognized by said receiver as a preferred claim under section 130 of the State Banking Law of the State of New York, being chapter 689 of the Laws of 1892, and that said demand has been refused.

" 8. That an actual controversy exists at the time of this submission between the said parties, upon the point hereby presented for decision."

The plaintiff demanded judgment for the amount of its claim and that it be decreed a preferred claim to be paid in full out of the assets, and for such other and further relief as to the court may seem proper, with costs.

The defendant demanded judgment that the plaintiff be decreed to be a general creditor and entitled only to its *pro rata* share of the assets with the other creditors.

*Herendeen & Mandeville*, for the plaintiff.

*William A. Beach*, for the defendant.

MERWIN, J.:

By section 130 of the Banking Laws (Chap. 689, Laws of 1892) it is provided as follows :

" § 130. Debts due savings banks from insolvent banks preferred. All the property of any bank or trust company which shall become insolvent, shall, after providing for the payment of its circulating notes, if it has any, be applied by the trustees, assignees or receiver thereof in the first place, to the payment in full of any sum or sums of money deposited therewith by any savings bank, but not to an amount exceeding that authorized to be so deposited by the provisions of this chapter, and subject to any other preference provided for in the charter of any such trust company."

By section 118 of the same act it is provided that the trustees of every savings bank " shall, as soon as practicable, invest the moneys deposited with them in the securities authorized by this article; but for the purpose of meeting current payments and expenses in

excess of the receipts, there may be kept an available fund not exceeding ten per centum of the whole amount of deposits with such corporation, on hand or deposit in any bank in this State, organized under any law of this State or of the United States, or with any trust company incorporated by any law of the State; but the sum so deposited in any one bank or trust company shall not exceed twenty-five per centum of the paid-up capital and surplus of any such bank or company."

Provisions to the same effect existed in chapter 409 of the Laws of 1882, which was in force up to the passage of the act of 1892.

It is claimed on the part of the plaintiff, that section 130 applies to National banks as well as State banks, and was so intended by the Legislature. This proposition does not seem to be disputed by the defendant. By section 118, authority was given to make deposits "in any bank in this State organized under any law of this State or of the United States." Section 130 refers to the same subject-matter, and the design naturally would be to afford protection to all deposits authorized to be made. The expression used is "any bank." This is broad enough to cover National banks as named in the 118th section. The evident object and purpose of the provision would not be obtained unless it did cover them. Taking both sections together, that is, I think, the fair construction.

Assuming then that the provision in question applies to National banks, is there any reason why it should not be operative?

The argument of the defendant's counsel is based mainly on the propositions that the State has no authority to exercise in this respect any control over National banks, and that the State legislation is inconsistent with the National legislation on the subject, and, therefore, inoperative.

In *Waite* v. *Dowley* (94 U. S. 527) the question was whether the statute of a State was void as to National banks which required the cashier of each National bank within the State, and the cashiers of all other banks, to transmit to the clerks of the several towns in the State in which any stockholder of such bank resided, a list of the names of such stockholders, the number of shares held by each, and the amount actually paid in on each share. It was held that the law was valid although Congress had legislated upon the subject, in that it had required of each National bank that a list of its stock-

holders shall be kept posted up in some place in their business office. In the opinion of the court, at page 533, it is said : "We have more than once held in this court that the National banks organized under the acts of Congress are subject to State legislation, except where such legislation is in conflict with some act of Congress, or where it tends to impair or destroy the utility of such banks as agents or instrumentalities of the United States, or interferes with the purposes of their creation. This doctrine was clearly and distinctly announced in *National Bank* v. *Commonwealth* (9 Wall. 353), and that case has often been referred to since, with approval in this court."

In the case in 9 Wallace it was held that a State law requiring the National banks to pay the tax which is rightfully levied on the shares of its stock is valid. It is there said (p. 362) "that the agencies of the Federal government are only exempted from State legislation so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government. Any other rule would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers into an unauthorized and unjustifiable invasion of the rights of the States. * * * So of the banks. They are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the Nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law. It is only when the State law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional." This doctrine is reiterated in *W. U. Tel. Co.* v. *Mass.* (125 U. S. 551).

Applying these principles to the present case, it is difficult to see how the State act interferes with the utility of the National bank as an agent or instrumentality of the general government. No possessory right is given until after the bank, by reason of its insolvency, has ceased to be of any utility as an agent or instrumentality of the government, and after its circulating notes are provided for. The

logic of the case in 9 Wallace will uphold the law in question here unless it is in conflict with some provision of the United States statute on the subject.

Upon this line it is argued that the State act is in conflict with those provisions of the National act which provide for a *pro rata* distribution of the assets and prohibit preferences. Those provisions are sections 5236 and 5242 of the United States Revised Statutes, and are as follows :

" § 5236. From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the Comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated ; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held.

" § 5242. All transfers of the notes, bonds, bills of exchange or other evidences of debt owing to any National banking association, or of deposits to its credit ; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor ; all deposits of money, bullion or other valuable thing for its use, or for the use of any of its shareholders or creditors ; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void, and no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action or proceeding in any State, county or municipal court."

In *Scott* v. *Armstrong* (146 U. S. 499) the ordinary doctrine of equitable set-off in case of insolvency was applied against the receiver of an insolvent National bank. It was there argued that the sections above quoted forbid it, because they required that after the redemption of the circulating notes had been provided for the

assets should be ratably distributed among the creditors, and that no preferences given or suffered, in contemplation of or after committing the act of bankruptcy, should stand, and it was insisted that the assets of the bank existing at the time of the insolvency included all its property, without regard to any existing liens or set-offs. To this the court say :

" We do not regard this position as tenable. Undoubtedly any disposition by a National bank, being insolvent or in contemplation of insolvency, of its choses in action, securities or other assets, made to prevent their application to the payment of its circulating notes, or to prefer one creditor to another, is forbidden ; but liens, equities or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency and not in contemplation thereof, are not invalidated. The provisions of the act are not directed against all liens, securities, pledges or equities, whereby one creditor may obtain a greater payment than another, but against those given or arising after or in contemplation of insolvency. Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."

In *Casey, Receiver,* v. *La Societé de Credit Mobillier* (2 Woods, 77) it was held that the preference of one creditor by a National bank, mentioned in section 5242 of the Revised Statutes, is a preference given to the creditor to secure or pay a pre-existing debt ; that when a National bank receives a loan on condition that the lender shall be secured therefor, and security is accordingly given by pledging a part of the assets of the bank, this is not a preference within the meaning of section 5242, although the bank is then in an embarrassed state ; that the fact that the assets pledged were changed from time to time as they fell due, and others substituted in their stead, according to the contract between the bank and the pledgee did not make the pledge of the substituted assets void ; that the title of the receiver is the same as that of an assignee in bankruptcy, and is subject to all equities.

In *Clark* v. *Iselin* (21 Wall. 360) it was held that the giving by a debtor of a confession of judgment, for a consideration of equal value passing at the time, is not an act of bankruptcy, though such confession be not entered of record, but kept in the creditor's custody, and its existence unknown to others. In the opinion it is said that the question whether a transfer of securities is a preference depends on whether it was a transfer of property for a present sufficient consideration, or was a transfer to satisfy or secure an antecedent debt or liability; that the fact that years before the entry of the judgment the debtor contemplated the possibility that a judgment might be obtained, and by the confession of judgment put it in the power of the creditor to obtain one without his knowledge or subsequent assent, was wholly impertinent to the inquiry whether the debtor intended an unlawful preference at the time of the entry of the judgment, and that the intention at that date was the material question. In *Matter of Craft* (2 Benedict, 221) it is said by Judge BLATCHFORD that the words, "in contemplation of bankruptcy," as used in the act of 1867, mean, in contemplation of committing what was made by the act an act of bankruptcy, or of voluntarily applying to be decreed a bankrupt.

In the present case it must be presumed that the National bank, when from time to time it received the deposits from the savings bank, knew of the law which authorized such deposit and provided for the preference. The savings bank was not bound to deposit in that particular bank, nor was the latter bound to receive the deposit. But if the one made and the other received the deposit, it must be assumed that both parties then intended that the security provided for by the statute should at the proper time be operative. There was then in effect a contract that if the deposit or loan was made the security should be given. This was a part of the transaction in each case of deposit. It was not a case of a security for a prior indebtedness, but it was a case where on each occasion a consideration passed of equal value with the security or right given. In this view and within the rulings in the cases above referred to, there was not a preference in violation of the provisions of section 5242.

By virtue of the State act and the conduct of the parties, the savings bank had at least an equitable lien, which is effective within the principles laid down in *Scott* v. *Armstrong*, and is not antago-

nistic to the *pro rata* distribution provided for in section 5236. The receiver took subject to any valid liens or equities. The bank that he represents received the deposits subject to the condition imposed by the State statute, and whether it be said that a trust was impressed or a lien imposed, the statute bound the bank and its assets when they passed to the receiver and interfered with no rights of the government. The principles laid down in the *Scott* case are quite applicable and justify the claim of plaintiff to a preference. The right of the plaintiff to a preference was preserved within the principles laid down in that case, and was not, therefore, in conflict with the National law.

The foregoing considerations lead to the conclusion that the plaintiff is entitled to judgment against the defendant for the amount claimed, and that the same be decreed a preferred claim, to be paid in full out of the assets which have or may come into the hands of the said receiver, and be paid by said receiver or by him certified to the Comptroller to be paid as a preferred claim in due course of administration.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment for the plaintiff as stated in the opinion, with costs.