[S. F. Nos. 2491, 2558. In Bank.—September 24, 1902].

CHARLES E. LAIDLAW, Respondent, v. PACIFIC BANK, Appellant; MATHEW McGOWAN, Intervener, Respondent.

BANKS—POWER TO INCUR INDEBTEDNESS—CONTRACT ULTRA VIRES.—A bank incorporated under the act of April 11, 1862, has no power to contract any debt for borrowed money, or for money paid out at its request by a stockholder in discharge of its obligation to a depositor. Such contract is *ultra vires* and void, regardless of the relation of the stockholder to the bank.

ID.—LIQUIDATION OF INSOLVENT BANK—PREFERENCE OF NON-STOCKHOLDING DEPOSITORS.—Section 10 of the act of 1862 gives non-stockholding depositors a security in the capital stock and assets of an insolvent bank in liquidation, which should be satisfied before any other creditor should be permitted to apply any portion thereof to the satisfaction of his debts, whether he be a stockholding depositor or a general creditor.

Id.—Action by Assignee of Ultra Vires Contract—Pleading—Inter-
vention.—In an action by the assignee of an *ultra vires* contract
with a bank, where an intervener has merely the right of an attach-
ing creditor of the assignor, though it would be better practice to
plead the invalidity of the contract in answer to the complaint in
intervention, yet where it was pleaded in the answer to the amended
complaint served on the intervener, and the court treated the ques-
tion of invalidity as properly in issue as to all parties, the intervener,
whose rights depended on its validity, and who had as full notice
and opportunity to meet the question of invalidity as if it had been
twice pleaded, could not have been injured by the omission, and
cannot claim that he was taken by surprise by such defense.

Id.—Specifications of Insufficiency of Evidence.—Where the testi-
mony is all in the record, and the specifications of insufficiency of
the evidence pointed to each of the probative facts contained in
the findings attacked upon appeal, and were sufficient fairly to
notify the respondent of the contention that would be urged against
the finding upon appeal, the specifications of particulars are suf-
ficient.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial. Frank H. Murasky, Judge.

The facts are stated in the opinion of the court.

E. D. Sawyer, and J. M. Burnett, for Appellant.

James M. Allen, Isaac Frohman, and Frohman & Jacobi, for
Charles E. Laidlaw, Respondent.

Roger Johnson, for Intervener, Respondent.

THE COURT.—Two appeals, each independent of the
other,—one being from the judgment and the other from the
order denying the Pacific Bank a new trial,—are before us in
this case. The appeal from the judgment has been heretofore
considered, but a rehearing was granted, and the two appeals
will now be disposed of in one opinion.

On the appeal from the order denying a new trial it is con-
tended that the finding of the court to the effect that the appel-
lant, the Pacific Bank, on or about the twenty-second day of
June, 1893, became indebted to plaintiff's assignor, R. H.
McDonald, in the sum of $97,003 for money theretofore paid,
laid out, and expended by said McDonald for the use and
benefit of said defendant, and at its request, is not supported

by the evidence. · We think this contention is well founded. From the evidence it appears that the People's Home Savings · Bank was a depositor in the defendant bank to the extent of $150,000, and was pressing for payment, but defendant could not pay the same from its own means at that time; that thereupon, at the request of the Pacific Bank, the amount of the $150,000 was secured to the People's Home Savings Bank by a mortgage given it upon 16,000 acres of land in San Luis Obispo County belonging to R. H. McDonald, the plaintiff's assignor. This was accomplished in the following manner: Said real property was conveyed by said R. H. McDonald, acting through his attorney in fact, R. H. McDonald, Jr., to one A. L. Jenkins, an employee of the defendant, without any consideration being paid therefor by said Jenkins, and Jenkins then mortgaged the property to the savings bank. Jenkins received nothing on account of it, but on the execution of the mortgage as aforesaid the savings bank credited the Pacific Bank with said amount, and the Pacific Bank charged it to the savings bank and gave R. H. McDonald credit for the same. About four days later the Pacific Bank closed its doors, and some four months thereafter, on October 16, 1893, after due proceedings, it was adjudged insolvent under the act of March 30, 1878, creating a board of bank commissioners, and was prohibited from the further transaction of business, and ever since has been in process of liquidation under said act. It has since paid dividends amounting to forty per cent on the unsecured claims of its non-stockholding depositors and other creditors, and the remaining assets are of sufficient value to enable it to pay forty per cent to plaintiff and intervener upon the claim involved in this action, provided no other creditor is paid. McDonald was credited as a depositor by the Pacific Bank with the said $150,000, and was charged with amounts drawn out by him so as to reduce the credit to the $97,003 sued for herein. The Pacific Bank was incorporated under the act of April 11, 1862, (Stats. 1862, p. 199). This act provides (in section 10) that "it shall not be lawful for the corporation, or the directors, to contract any debt or liability against the corporation, for any purpose whatever, but the capital stock and the assets of the corporation shall be a security to depositors who are not stockholders, and the by-laws may provide that the same security shall extend to deposits made by stockholders." The by-laws of the Pacific Bank do

not provide that the same security shall extend to deposits
made by stockholders. It is further provided in the said act
and in the amendments thereto of 1864 (see Stats. 1863-1864,
p. 158) that the corporation shall have certain powers neces-
sary and usual in the transaction of the business of a savings
bank. It is empowered by the act, among other things, to
purchase a lot and building necessary in its business, to loan
and invest the funds of the corporation, to receive deposits of
money and to loan and invest the same, to collect the same
with interest, and to repay such deposits without interest, or
with so much of the earnings and interest as the by-laws of the
corporation may provide. There are various other matters for
which, it appears from the act, the corporation may become
bound as for an indebtedness, and as to all these matters it
may properly be said, construing the various sections of the
statute together, that they constitute exceptions and qualifi-
cations of the general inhibition laid down in section 10 of the
act against the contracting of any debt or liability whatever.
But nowhere in the act is there anything to be found qualify-
ing this inhibition so as to permit the corporation to incur an
indebtedness for money loaned to it or laid out and expended
for its benefit in the manner and form herein disclosed. The
act is the charter of the corporation defendant, and a cor-
poration being the creature of the law, the legislature has the
power to limit it as to the business it shall transact as well as
to the manner in which it shall be transacted, and it is clear
from a reading of the entire act that it was the intention and
purpose of the legislature to withhold from the corporation
the power to run in debt for borrowed money, or to do what
seems to be substantially the same thing—incur an indebted-
ness for money paid out by a third party at its request in dis-
charge of its obligation. The primary purpose of the law
constituting the charter of defendant was, that it should be
conducted for the purpose of receiving deposits and loaning
the same, so that they should earn interest and thereby be of
profit to the corporation as well as to the depositors. It was
never contemplated that the corporation should become a
borrower of money and a payer of interest, and unless the act
is so construed, then the provision against the contracting of
"any debt" must go for naught. As we have seen, the bor-
rowing of money is not made an exception to this general pro-
vision by any other provision of the act, and if by construction

such an indebtedness is to be excepted from its operation, by similar construction indebtedness for any and every other purpose can be excepted, and thus the institution be turned entirely away from the purpose of the law in which it has its foundation. The corporation had no power to request or contract for the payment of its debts by a third person, but under the act it should pay its own debts out of its own funds, and when it could not do this it was time for it to close its doors. Its contract with McDonald was therefore *ultra vires,* and cannot be enforced under the circumstances here presented. McDonald's payment of the People's Home Savings Bank must be treated as a mere voluntary act on his part, which, to say the least, created no right against the Pacific Bank that should be permitted in any way to impair the rights of non-stockholding depositors clearly intended to be secured to them by the statute.

No question of subrogation arises in the case, as the action on the part of plaintiff as well as upon intervener's part does not in any respect proceed upon the theory of subrogation, but, on the contrary, the complaints of both of said parties count distinctly upon money loaned to the Pacific Bank and upon money paid, laid out, and expended for its benefit.

We have herein treated the plaintiff's rights from the standpoint of respondent's claim that plaintiff's assignor, McDonald, became, by virtue of the transaction, a general creditor of the Pacific Bank, and not a depositor therein; and treating him thus we have seen that he became a general creditor for a purpose and in a way forbidden by the statute, and against which it was one of the purposes of the statute to secure the non-stockholding creditors. Respondents seem to concede that if McDonald, being a stockholder as he was, stood in the position of a depositor as to the sum involved in this case he could not recover. (Stats. 1862, p. 201, sec. 10; *Murphy* v. *Pacific Bank,* 119 Cal. 334, and 130 Cal. 542.) It is plain, then, that whether his relation to the defendant was that of a general creditor or that of a depositor, the result must be the same, and it is not therefore necessary that we should analyze the evidence to determine in which of these two relations McDonald stood. In either event it is plain that the finding of indebtedness stands, as a matter of law, without support in the evidence, and that the defendant's motion for a new trial should have been granted.

We are further of the opinion that a proper construction of section 10 of the statute gives non-stockholding depositors a security in the capital stock and the assets of the corporation which should be satisfied (the bank being in liquidation) before any other creditor should be permitted to apply any portion of such capital stock or assets to the satisfaction of his debts. If there was no statute on the subject at all, the non-stockholding depositors would have security in common (at least) with other creditors in the capital stock and assets. The legislature intended to give to these non-stockholding depositors some right that they did not possess under the law and in the absence of the statute, and also to confer this same right upon stockholding depositors when the by-laws of the corporation should provide for it. Construe the statute contrary to this, and it follows that the legislature did a vain and useless thing when it enacted section 10.

The facts showing that the alleged contract was *ultra vires* and void were fully pleaded in defendant's answer to plaintiff's amended complaint. The record shows that this answer was served and filed May 10, 1898, some fifteen days after the amended complaint of intervener had been filed. The statute required that it should be served on intervener as well as on plaintiff, and we presume that it was so served. From this the intervener had full notice as to this affirmative defense that was interposed for the purpose of preventing the plaintiff from obtaining a judgment in which the intervener hoped to share. In its answer to the amended complaint in intervention the defendant did not repeat the facts showing the invalidity of the contract sued on, but contented itself with denying the allegations of indebtedness to McDonald contained in said complaint in intervention. The trial court, however, treated the question of the validity of the contract sued on as properly in issue as to all parties to the suit; and in this we see no error that could have worked any injury to the intervener. He had intervened principally for the purpose of seeing to it that the plaintiff obtain a judgment against the defendant, for he hoped to share in that judgment. His rights as set forth in his complaint were merely those of an attaching or judgment creditor of R. H. McDonald, and of course his right of recovery against defendant depended entirely upon McDonald's rights. He cannot complain that

he was taken by surprise by this affirmative defense, for he had previous notice of it and every opportunity to present his side of the question concerning it. When he had intervened he became in a sense substituted as the plaintiff in the case, at least to the extent of his undisputed claim against McDonald, and it was his right to maintain that claim against any defense that might be set up against it in any way. He has vigorously attacked the defense in question on this appeal, and we have no doubt that he did the same thing in the court below, and with the same effect as though the defense had been pleaded twice in the case instead of only once. Therefore, while we think it would have been the better practice to have specially pleaded the defense of the invalidity of the contract in the answer to the complaint in intervention, yet it affirmatively appearing that under the facts of this case the intervener was not harmed by its omission, and that the court below treated it as properly pleaded as against the intervener, it follows that the finding upon that issue should have been in defendant's favor as against the intervener as well as against the plaintiff, and that a new trial should therefore be granted as against the intervener also.

It is contended that the specifications of insufficiency of the evidence to support the finding of indebtedness are defective. This contention may be disposed of on the authority of *Motz* v. *Motz,* 136 Cal. 558, and *American Type etc. Co.* v. *Packer,* 130 Cal. 461. In those cases it appeared, as it does in this case, that the testimony was all in the record, and that the specifications of particulars pointed to each of the probative facts contained in the findings attacked on the appeal, and that they were therefore sufficient to fairly notify respondent of the contention that would be urged against the finding upon appeal. We think the specifications of particulars are sufficient. As the order appealed from must be reversed, and this will have the effect to annul the judgment, and on a new trial the finding as to the indebtedness under the law and evidence will probably be adverse to plaintiff, it seems to be unnecessary to further notice the appeal from the judgment.

The judgment and order denying a new trial are reversed.

Hearing in Bank denied.