STATE OF IOWA EX REL B. F. CARROLL, Auditor of State, v.
CORNING STATE SAVINGS BANK, AND C. F. ANDREWS,
Receiver, Appellees, and THE DES MOINES NATIONAL
BANK, Intervener, Appellant.

**Banks and Banking:** CERTIFICATE OF DEPOSIT: LOANS: PAROL EVI-
1  DENCE.  Parol evidence is admissible to show that in fact the trans-
action resulting in the issuance of a bank certificate of deposit was
a loan.

**Banks and Banking:** DEPOSITS.  One bank may lawfully deposit
2  with another.

**Same:** EVIDENCE.  In an action on a certificate of deposit it cannot
3  be shown by the bank that no money was received; but if
recovery is sought on an implied contract for money had and
received this fact may be shown.

**Same:** LOANS.  One who deposits or leaves his money with a bank
4  subject to his order is a depositor, even though the bank
issues to him a time certificate bearing interest, and he can
recover the same and is entitled to a preference over general
creditors; but if the money is left for a fixed time at a stipu-
lated interest and the lender surrenders all control over or
right thereto for such time, it amounts to a loan, and can-
not be established as a preferred claim against the insolvent
bank.

**Corporations:** ULTRA VIRES CONTRACTS.  *Ultra vires* contracts of a
5  corporation are not strictly speaking such as are prohibited by
law, but are such as do not serve the purpose for which the
corporation was chartered, and which are not positively but
impliedly forbidden because not expressly or impliedly author-
ized.

**Same:** ILLEGAL CONTRACTS.  A corporation having received the bene-
6  fit of an *ultra vires* contract is estopped to deny its liability
thereon; but there can be no recovery on a contract which is
forbidden by statute, especially where one for whose benefit
the statute was intended would be prejudiced thereby.

**Savings Banks:** INSOLVENCY: ILLEGAL CLAIMS.  The statute prohib-
7  iting savings banks from contracting any indebtedness except
to depositors, for expenses, etc., is for the benefit of the
customers, depositors and lawful creditors of the bank; and

upon insolvency of the bank those holding its obligations which are prohibited by the statute should not be permitted to share the assets with other creditors.

*Appeal from Adams District Court.*— HON. H. K. EVANS, Judge.

THURSDAY, OCTOBER 24, 1907.

THIS is a proceeding to establish a claim against the receiver of the Corning State Savings Bank upon two certificates of deposit issued by that bank, and now held by the intervener. The trial court denied the claim on each certificate, and intervener appeals.

*Hager & Powell,* for appellant.

*Maxwell & Maxwell, W. E. Miller,* and *Arthur R. Wells,* for appellees.

DEEMER, J.— The Corning State Savings Bank was a corporation organized under the savings bank law of this State. Upon proper proceedings instituted by the Auditor of State, C. F. Andrews was appointed receiver of said bank, and is now acting as such. March 24, 1904, the Des Moines National Bank filed with the court and receiver its claim upon what purports to be two certificates of deposit in the sum of $5,000 each, issued by the Corning State Savings Bank, and upon a protested sight draft indorsed by said savings bank. The claim upon the sight draft was dismissed, and the case was tried upon the two certificates of deposit. The receiver pleaded that the intervener was not a depositor; that the savings bank never received any money from intervener; that whatever money it did receive was, in fact, a loan, prohibited by the laws of this State; and that the money received from intervener went to one La Rue, upon his personal account, and that the savings bank was under no obligation to return the same. Intervener denied

these claims, and further pleaded an estoppel upon the part of the savings bank and of the receiver. The trial court having dismissed the claim, intervener appeals, and presents the following questions for review: (1) Was it a depositor in the savings bank? (2) If not a depositor, is it entitled to have its claim established as a loan? (3) If the transaction was a loan, was it illegal, and, if so, will this illegality defeat its claim? Other questions incident to these main propositions will be considered during the course of the opinion.

One of these incidental questions is this: May the receiver show that, although certificates of deposit were issued by the savings bank, the transaction was, in fact, a loan?

1. BANKS AND BANKING: certificate of deposit: loans: parol evidence.

Intervener contends that this may not be done, for the reason that the contract is in writing, and that parol evidence is inadmissible to show the nature of the transaction. There is no merit in this contention. The issuance of a certificate of deposit does not in and of itself indicate the true nature of the transaction. Such an instrument may be issued, although a loan was intended, and parol evidence is admissible to show the true nature of the transaction. *Estate of Law,* 144 Pa. 499 (22 Atl. 831, 14 L. R. A. 103); *Hotchkiss v. Mosher,* 48 N. Y. 478; *First Bank v. Myers,* 83 Ill. 507. A certificate of deposit is for many purposes, treated as a promissory note, and parol evidence to show that it was given as evidence of a loan is admissible. We are not to be understood as holding that it is a mere receipt, and as such subject to be defeated by parol evidence showing that there was, in fact, no promise on the part of the bank issuing it. Our holding is that the nature of the transaction for which it was given — that is as to whether it was a loan or a deposit of money — may be shown by proper parol evidence. *Johnson v. Barney,* 1 Iowa, 531; *Huse v. Hamblin,* 29 Iowa, 501. The bank issuing such an instrument is in any event a debtor, but whether as to a depositor or a lender is subject to ex-

planation by parol.   None of the cases cited and relied upon by appellant are in point upon this proposition.

Appellee argues that one bank cannot be a depositor in another; but this is manifestly unsound.   There is no provision of law and no reason growing out of public policy

2. BANKS AND
BANKING:
deposits.

which forbids such a deposit.   *Elmira Bank v. Davis,* 73 Hun (N. Y.) 357 (26 N. Y. Supp. 200); *Same case,* 142 N. Y. 590 (37 N. E. 646, 25 L. R. A. 546); *Davis v. Elmira Bank,* 161 U. S. 275 (16 Sup. Ct. 502, 40 L. Ed. 700).

Another collateral question is this:   May the receiver show that the savings bank never received any money from intervener?   In so far as the action is upon the certificates

3. SAME:
evidence.

of deposit, it is manifest, we think, that it cannot be heard to so affirm.   But, if recovery is to be had upon an implied contract for money had and received, it may show that it did not receive any.   *Scow v. Farmers' Bank,* 136 Iowa, 1.

We are now brought down to the pivotal question in the case, to wit:   Was intervener a depositor in the savings bank as distinguished from a general creditor on account of

4. SAME:
loans.

a loan or loans made to that bank?   Determination of this question is important, for two reasons:   First, because, if it is a depositor, it is entitled to a preference over general creditors; and, second, if a mere lender, there may be some doubt of the validity of its claim on account of a statute providing what kind of loans may be made by a savings bank.   As to this latter proposition, we shall have something to say hereafter.   A depositor is one who delivers to or leaves with a bank money subject to his order.   These may be either time deposits or open ones subject to check.   As said by the Connecticut court:   " One whose money is intermingled with the general funds of a bank to an ascertained amount, who is acknowledged by the bank to be a creditor to that amount, and who is under no obligation to permit the money to remain there, is a de-

positor." *Catlin v. Savings Bank,* 7 Conn. 487.   In *Hunt v. Hopley,* 120 Iowa, 695, citing *State v. McFetridge,* 84 Wis. 473 (54 N. W. 1, 998, 20 L. R. A. 223), we said:

The transaction differs essentially from a loan. That is for the benefit of the borrower, while a deposit is for the benefit of the depositor.   The depositary may obtain an incidental advantage, but that is seldom the original object contemplated.   In a loan the borrower promises to return the money at a future time, in a deposit, whenever the money is demanded.   True, the technical relation of creditor and debtor springs from the making of deposits, but few of the many people who daily leave money with banks for safe-keeping, and exact the return of an equivalent amount, ever think of the transaction as a loan, or ever speak of it as such.   .   .   .   In *Law's Estate,* 144 Pa. 499 (22 Atl. 831, 14 L. R. A. 103), the difference was pointed out:   'Deposit is where a. sum of money is left with a banker for safe-keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum.   It may or may not bear interest, according to the agreement. While the relation between the depositor and his banker is that of debtor and creditor simply, the transaction cannot, in any proper sense, be regarded as a loan unless. the money is left not for safe-keeping, but for a fixed period, at interest, in which case the transaction assumes the characteristics of a loan.'   The Supreme Court of Wisconsin applied the same principle in *State v. McFetridge,* 84 Wis. 473 (54 N. W. 1, 998, 20 L. R. A. 223), in adjudging general deposits not investments, within the meaning of the statute of that State forbidding such by the State Treasurer, saying:   'By such deposit the depositor does not lose control of the money, but may reclaim it at any time.   True, he loses control of the specific coin or currency deposited, but not of an equal amount of coin or currency having the same qualities and value, which, as we have seen, is all that is required of him. But, if funds in the treasury are invested in United States or State bonds, or in loans on time to counties, cities, etc., the treasurer loses control thereof, and the same cannot be replaced in the treasury until the bonds are paid or sold, or such loans become due, and are collected by due course of law.   The retention by the treasurer of substantial control

over the funds in the one case, and his loss of such control
in the other, make the leading distinction between a mere
deposit of the funds and an ' investment ' thereof; as those
terms are used in the statutes.'    See also opinion by Post,
C. J., in *State v. Hill,* 47 Neb. 456 (66 N. W. 554); *City
of Lansing v. Wood,* 57 Mich. 201 (23 N. W. 769); *Alli-
bone v. Ames,* 9 S. D. 74 (68 N. W. 165, 33 L. R. A. 585);
*Norwood v. Harness,* 98 Ind. 134 (49 Am. Rep. 739).

Having distinguished as best we may between a deposit
and a loan, we now go to the evidence to see whether inter-
vener was a depositor as to either of the certificates in ques-
tion.   On the 19th day of October, 1899, while the savings
bank was a going concern and when no business relations of
any kind existed between it and intervener, Beaumont Apple,
an employé of intervener, wrote the savings bank that he had
made unexpected collections, and would be pleased to place
with the savings bank the sum of $5,000 for six months at 6
per cent. interest, and asked if it could use the same.   To
this the savings bank responded, through its cashier, that
with its present outlook for loans it could use the money on
a straight time certificate for one year at 6 per cent.   There-
upon Apple sent a draft payable to the savings bank for the
sum of $5,000, with a request for the certificate.   On Octo-
ber 21, 1899, the savings bank sent Apple an ordinary time
certificate of deposit for $5,000.   This was made payable
to Beaumont Apple, on return of the certificate properly
indorsed, with 6 per cent. interest from date; and by Apple
was indorsed to intervener.   This certificate was renewed
from time to time, and the last renewal is the certificate
declared upon in the first count of the petition.

The facts as to the issuance of the second certificate dif-
fer very materially from those out of which the first one
arose.   As to this, it appears that one Shepard visited the
officers of the savings bank, and these officials requested him,
Shepard, to call upon intervener and see if it would not send
the savings bank more money.   Shepard, in compliance with
this request, saw the officials of the intervener bank.   Pur-

suant to this, the intervener bank wrote the Corning bank a letter offering to deposit more money; at the same time, as we understand it, refusing to make a loan. In response to this, intervener bank received the following letter: "May 29, 1902. Arthur Reynolds, President, Des Moines, Iowa — Dear Sir: Herewith find our certificate of deposit $5,500.00 as per your letter of some time since, which please put to our credit on account. We do this in order to hold the real estate loans we have for sale until there is a better demand for them later in the summer. I have also personally indorsed the certificate as per former letters. Yours respectfully, F. L. La Rue, President." The certificate therein referred to was issued to La Rue, and by him indorsed to Apple, who, in turn, indorsed it to intervener bank, and the Corning bank was given credit upon the books of the intervener bank with the amount of the certificate. This certificate was marked "Paid" by the intervener bank, but, in fact, it was taken up by a renewal, and a new certificate was issued to La Rue, and by him indorsed as the other certificate had been. This certificate or one of the renewals thereof — all of which, save the one now in suit, were issued in the name of La Rue and by him indorsed — was signed by F. A. La Rue as president of the savings bank. Others were signed by the cashier or assistant cashier. The one in suit was issued directly to Apple, and is signed by the cashier of the savings bank.

From this recital of the facts it is apparent, we think, that the first transaction was in fact and form a deposit; and it is just as clear that the second transaction both in form and fact was a loan. La Rue had not deposited any money upon which this second certificate was issued, nor had Apple nor the bank. The National Bank simply gave the Corning Savings Bank credit for the amount of the certificate issued to La Rue, and was in no sense a depositor. By no stretch of the imagination can this last transaction be said to be a deposit. As to the first the Corning Bank was not applying

for a loan. . It was not so far as shown in need of money, but it consented to receive the money which Apple proposed to deposit and to issue its certificate therefor. Either Apple or his indorsee could have withdrawn the money at any time, and the mere fact that the certificate of deposit drew interest at a large rate is not controlling. The certificate does not show that it was a time one, and, if it did, this would not be controlling. As to the first transaction, the relation of borrower and lender did not exist, but rather that of banker and depositor. . As to the second, the relation was clearly that of borrower and lender. The facts and circumstances surrounding these transactions are the strongest arguments that can be presented in favor of the conclusions reached.

The trial court was in error in disallowing the claim on the first certificate, and in failing to treat it as a preferential one under the rule announced in *State v. Bank,* 127 Iowa, 198.

II.    The only other question is: What shall be done with the claim upon the second certificate in suit, which we have found to be a loan to the savings bank? Appellant insists that it shall be allowed as a general claim against the receiver, while appellee contends that the trial court was correct in holding that it is entirely invalid, because prohibited by law. Code, section 1855, provides that "no savings bank, its directors or trustees shall contract any debt or liability against the bank for any purpose whatever, except for deposits, and the necessary expenses of managing and transacting its business, and to pay obligations incurred for the purpose of obtaining money with which to pay deposits." It is contended that the loan was in contravention of this statute, and that no recovery may be had on account of that fact. Upon this proposition the authorities are in conflict. See, *Laidlaw v. Bank,* 137 Cal. 392 (70 Pac. 277); *Stover v. Flower,* 120 Iowa, 514. In solving this question, it is important to distinguish be-

5. CORPORATIONS: *ultra vires* contracts.

tween *ultra vires* and illegal contracts.  As said in *Tourtelot v. Whithed,* 9 N. D. 407 (84 N. W. 8):

The term *ultra vires* has been used without accurate discrimination.  Certain contracts on the part of corporations may be prohibited by positive law either statutory or common.  Where such contracts are made by corporations they are, of course, unlawful.  They are *mala prohibita* and void, and for the same reason that the prohibited contract of an individual would be void.  Yet courts have termed them *ultra vires,* and have then proceeded to say that *ultra vires* contracts were void, and might be disregarded at pleasure.  More properly speaking, *ultra vires* contracts of a corporation are such as do not in any manner serve the accomplishment of the purposes for which the corporation is chartered.  They are contracts not positively forbidden, but impliedly forbidden, because not expressly or impliedly authorized.

If the contract were simply *ultra vires,* the bank, having received the benefits thereof, would be estopped to deny its liability.  *Church v. Johnson,* 93 Iowa, 544; *Aldrich v. Bank,* 176 U. S. 618 (20 Sup. Ct. 498, 44 L. Ed. 611).  But, if the contract be one prohibited by law, and therefore unlawful, then no recovery may be had thereon.  *In re Insurance Co.,* 107 Iowa, 148; *Steever v. Railroad Co.,* 62 Iowa, 371; *Stover v. Flower, supra;* Page on Contracts, sections 1083, 1084; *State Bank v. Coquillard,* 6 Ind. 232; *Siter v. Sheets,* 7 Ind. 133; *Bank v. Parsons,* 21 Vt. 199; *Dillon v. Allen,* 46 Iowa, 299.  The adjudicated cases and the reasons for the rule are collected in *In re Insurance Co., supra,* and need not be repeated here.  Even where there is an express prohibition, the question of the validity of the contract depends somewhat upon the purpose of the statute.  If for the benefit of those who might be prejudiced if violation thereof were permitted, the persons thus to be prejudiced may plead the invalidity of, and defeat the contract.

This statute was evidently for the benefit of those who cared to make deposits of their savings, and to prevent banks

6. SAME: illegal contracts.

chartered for that purpose from engaging in a general bank-
ing business with all its incidents and hazards;
and the Legislature saw fit to prohibit such
banks from engaging in certain forms of busi-
ness.   This was for the benefit of the customers, depositors,
and creditors of the bank; and, when such a bank becomes
insolvent, those creditors whose loans are prohibited should
not be allowed to share with other lawful creditors.   See,
as sustaining these conclusions, *Bisalia Co. v. Sims*, 104 Cal.
326 (37 Pac. 1042, 43 Am. St. Rep. 105); *McNulta v.
Bank,* 164 Ill. 427 (45 N. E. 954, 56 Am. St. Rep. 203);
*Beecher v. Mill Co.,* 45 Mich. 103 (7 N. W. 695); *New
York Co. v. Helmer,* 77 N. Y. 64.

7. SAVINGS
BANKS:
insolvency:
illegal
claims.

The statute quoted is an express prohibition of such a
transaction as took place between these banks, and of this
intervener bank is conclusively presumed to have had knowl-
edge.   *Thilmany v. Iowa Co.,* 108 Iowa, 333; *Railroad Co.
v. Bridge Co.,* 131 U. S. 371 (9 Sup. Ct. 770, 33 L. Ed.
157).   Doubtless this is the reason why the second transac-
tion assumed the form it did.   Some cases seem to hold that,
even where the transaction is prohibited by law, if a benefit
has been conferred upon the promisor, recovery may be had
of him as for money had and received; but none of them to
which our attention has been called permit recovery upon the
contract itself.   Whatever the rule upon this subject, there
can be no recovery here, for the reason that the pleadings will
not justify it.   The rule to which we have just referred is
stated in *In re Insurance Co., supra.*   There is a manifest
distinction between this rule and the one which allows recov-
ery in certain cases by reason of an estoppel.   In the latter
case recovery is upon the contract, while in the former it is
upon an implied or *quasi* contract created by law.   One can-
not by plea of estoppel evade the laws of the State and reap
the benefits of a prohibited agreement.   The trial court was
right in dismissing the claim on the second certificate.   As
sustaining these conclusions, see *Bank v. Church,* 129 Iowa,

270; *Fidelity Ins. Co. v. Bank,* 127 Iowa, 591; *Watts v. Life Ass'n,* 111 Iowa, 90.

The result is that the trial court was in error in denying the claim on the first certificate; and that it correctly disallowed the claim on the second. The case will be remanded for an order in harmony with this opinion. Each party will pay one-half of the costs of this appeal.— *Reversed* in part and *affirmed* in part.