[No. 18268.    Department One.—October 3, 1894.]

THE VISALIA GAS AND ELECTRIC LIGHT COM-
PANY, Respondent, *v.* J. F. SIMS et al., Appel-
lants.

Contracts—Consideration of Lease—Detriment to Lessor.—A lease
of premises, including the plant of an electric light and gas company,
for the term of two years, in which the lessee agrees to take possession,
manage, control, and operate the same, and to pay the company every
three months during the term all the receipts of the gas and electric
light business after paying all necessary charges and expenses, is sup-
ported by a sufficient consideration of detriment to the lessor in the
transfer of the possession of the property and of the use thereof for the
term of the lease, though the lessee was not benefited thereby.

Id.—Void Contract—Corporations—Public Franchise—Lighting of
City—Lease Ultra Vires—Public Policy.—An electric light and
gas company, having a franchise granted by a municipal corporation
to operate its gas and electric works, and to supply the inhabitants of
the city with gas and electricity, is bound to operate its gas and electric
works, and a lease thereof to a third party for a period of years is
*ultra vires* and void as against public policy.

Id.—Denial of Relief—Estoppel.—Where a contract with a corporation
is not only *ultra vires*, but also void as against public policy, the court
will not give relief to either party, and the fact that the contract is per-
formed on one part does not estop the other party to plead the invalid-
ity of the contract.

Id.—Account for Money Received—Unremunerative Lease.—Although
where money or property is given to a corporation under a void contract
the corporation is liable to account for the money or other property
received, this rule cannot apply to a lessee of the corporation whose
lease is void, and who is found to have made nothing from the lease.

Appeal from a judgment of the Superior Court of
Tulare County.

The facts are stated in the opinion.

*W. H. H. Hart, Aylett R. Cotton,* and *Nowlin & Fassett.*
for Appellants.

The plaintiff having availed itself of the privileges
conferred on it by the ordinance of said city of Visalia,
it became its legal duty, itself, to maintain and operate
its gas and electric works, and to supply the inhabitants
of that city with gas and electricity for illuminating
purposes, and it was therefore against public policy, and

in violation of such duty, to lease these works and privileges. (2 Morawetz on Corporations, secs. 656, 1114, 1116; *Thomas* v. *Railroad Co.*, 101 U. S. 83; *York etc. R. R. Co.* v. *Winans*, 17 How. 30; *Black* v. *Delaware etc. Canal Co.*, 22 N. J. Eq. 130; *State* v. *Hartford etc. R. R. Co.*, 29 Conn. 538, 547; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 659; *People* v. *Chicago Gas Trust Co.*, 130 Ill. 268; 17 Am. St. Rep. 319; *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 411; Green's Brice's Ultra Vires, 2d ed., 120, 124, 125, 398–400.) Even if the lessee had received any money under the contract which continued in his hands, or any benefit thereunder, an action could not be maintained upon the contract itself, as is attempted in this action, the contract being against public policy, *ultra vires*, and void, and a suit could only be sustained when brought to recover the money actually received, on an implied promise to pay for the benefit received. (Green's Brice's Ultra Vires, 729, 747, 748; *San. Francisco Gas Co.* v. *San Francisco*, 9 Cal. 453; *Foulke* v. *San Diego S. P. R. R. Co.*, 51 Cal. 365; *Davis* v. *Old Colony R. R. Co.*, 131 Mass. 275; 41 Am. Rep. 221; *Railway Co.* v. *Keokuk etc. Bridge Co.*, 131 U. S. 389; *Central Transp. Co.* v. *Pullman Palace Car Co.*, 139 U. S. 54, 55.)

*Bradley & Farnsworth*, for Respondent.

The defendants having received all the benefits under the contract, and it being an executed contract as to them, they are estopped from relying on such a defense. (Bigelow on Estoppel, 5th ed., 465, 466; Morawetz on Private Corporations, sec. 689; Beach on Private Corporations, secs. 424, 425; *Argenti* v. *City of San Francisco*, 16 Cal. 264, 265, 273; *Union Water Co.* v. *Murphy's Flat Fluming Co.*, 22 Cal. 630; *Main* v. *Casserly*, 67 Cal. 127, 128; *Grangers' Business Assn.* v. *Clark*, 67 Cal. 634; *Magee* v. *Pacific Imp. Co.*, 98 Cal. 678; 35 Am. St. Rep. 199; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 70; 20 Am. Rep. 504; *Woodruff* v. *Erie Ry. Co.*, 93 N. Y. 610; *Rider*

*Life Raft Co.* v. *Roach,* 97 N. Y. 381; *Wright* v. *Hughes,* 119 Ind. 324; 12 Am. St. Rep. 412.)

Temple, C.—The complaint charges that plaintiff leased to one Lynch, June 24, 1887, certain premises, including the plant of the electric light and gas company, for the term of two years from June 1, 1887. That Lynch agreed to take possession, manage, control, and operate the same, and to pay said company every three months during the term all the receipts of said gas and electric light business, after paying all necessary charges and expenses incurred in carrying on said business; and further agreed that the amount so paid should be sufficient to enable it to pay an annual dividend to its stockholders of five per cent upon its capital stock of twenty-eight thousand dollars, and, in case of deficiency, he would pay to such company every three months such further sums as would enable it to pay such dividend.

That defendants became sureties by signing an agreement indorsed on said agreement of lease, whereby they agreed if said Lynch failed to pay plaintiff such sums, or any sums which might be due, they would pay the same.

That Lynch took possession of the demised property and retained it until June 1, 1889, without paying plaintiff any sums of money as rents or receipts from said business.

That on the 1st of June, 1888, there became due plaintiff on said agreement fourteen hundred dollars, and on the 1st of June, 1889, the sum of fourteen hundred dollars; that no part of said sum has been paid.

The answer contains several defenses: 1. It denies that Lynch held possession for two years, and avers that plaintiff ejected him August 1, 1888; 2. There was no consideration for Lynch's agreement; 3. No consideration for the agreement to pay sums additional to the receipts from the business; 4. Receipts did not exceed the expenses; there was, therefore, a failure of

consideration; 5. The contract of defendants was without consideration; 6. Failure of consideration for sureties' agreement; 7. Want of consideration again pleaded; 8. Plaintiff was incorporated to furnish gas and electricity to the inhabitants of Visalia for illuminating purposes; the alleged lease was therefore *ultra vires;* 9. The contract is *ultra vires* and against public policy.

A defense by amendment sets up the incorporation of plaintiff for specific purposes of furnishing light to the inhabitants, an ordinance procured by it from the city authorizing it to lay pipes in the streets and to erect masts for electric lights, the acceptance of the franchise, the construction of the works, the duty of the corporation to furnish gas and electric lights, in consideration of the privileges, and its undertaking that the works shall not constitute a nuisance, and again charges that the lease to Lynch was against public policy and void.

The findings and judgment are for plaintiff. Nevertheless, the court found that the receipts from the demised property were insufficient to pay running expenses.

That plaintiff was incorporated for the purpose of manufacturing coal gas and to sell such gas and electricity to the inhabitants of Visalia, and was by ordinance authorized to lay down and maintain gas pipes in the streets of said city, and through such pipes supply the inhabitants with gas; and to erect and maintain poles, masts, and wires to conduct electricity through said city. That prior to the making of said agreement it had accepted said franchise, and had laid its pipes in the streets of said city, and erected the poles, masts, and wires, and when the lease was made was in the possession of and using said plant and said franchises.

That among other restrictions imposed by such ordinance was the requirement that the works should be so constructed and used as not to become a nuisance. That no authority was conferred by said ordinance upon plaintiff to lease or assign such franchise.

1. Defendants contend that the lease and their under-

taking as sureties are void, because not supported by a valuable consideration.

The lease is supposed to be unsupported by a valuable consideration, because it in terms binds the lessee to pay over to the lessor all moneys received over and above running expenses. Therefore, it is said, there was no chance for a profit to the lessee. His agreement to take care of and manage the works and to guarantee a certain profit was gratuitous. The contract bound him to do it for nothing.

We need not inquire what induced Lynch to enter into a contract so one-sided. He may have had a motive which is not apparent. As matter of law, however, the contract was supported by a sufficient consideration. This may as well consist in detriment to the lessor as in profit to the lessee. By the contract he acquired possession of the property for two years, and induced plaintiff to forego, for the same period, its possession and use. Who can say that plaintiff could not and would not have realized a profit from the property, but for the lease?

2. The main defense, however, is that the lease is *ultra vires* and against public policy.

The real question presented is not that the lease is *ultra vires* as to the corporation, but that plaintiff having availed itself of the franchise granted it by the city of Visalia, it became its legal duty to operate its gas and electric works, and to supply the inhabitants with gas and electricity, and it was, therefore, against public policy to lease those works and privileges to Lynch, and thus disable itself for the time from performing its duty.

This proposition is clearly maintained in *Thomas* v. *Railroad Co.*, 101 U. S. 71. That was the case of a lease of a railroad and franchise. The court said, speaking through Mr. Justice Miller:

"Where a corporation like a railroad company has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due

performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions, which undertakes, without the consent of the state, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the state, and is void as against public policy. This doctrine is asserted with remarkable clearness in the opinion of this court, delivered by Mr. Justice Campbell, in *York etc. R. R. Co.* v. *Winans*, 17 How. 30. . . . . 'This conclusion [argument] implies that the duties imposed upon the plaintiff by the charter are fulfilled by the construction of the road, and that by alienating its right to use, and its powers of control and supervision, it may avoid further responsibility. But those acts involve an overturn of the relations which the charter has arranged between the corporation and the community. Important franchises were conferred upon the corporation to enable it to provide facilities for communication and intercourse required for the public convenience. Corporate management and control over these were prescribed, and corporate responsibility for their insufficiency provided as a remuneration to the community for their grant. The corporation cannot absolve itself from the performance of its obligations without the consent of the legislature."

This case was cited and approved in *Green Bay etc. R. R. Co.* v. *Union Steamboat Co.*, 107 U. S. 98, and in *Oregon Ry. & Nav. Co.* v. *Oregonian Ry. Co.*, 130 U. S. 1.

So, too, the customers are interested in having a responsible party to deal with. The city has provided such a party in its contract with the corporation, for such it has been held to be. (*People* v. *Chicago Gas Trust Co.*, 130 Ill. 268; 17 Am. St. Rep. 319; *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 411.)

The same conclusion is reached upon the principle that they cannot delegate functions and powers given to them. *Delegatus non potest delegare.*

The subject is extensively discussed in Morawetz on Private Corporations, sections 656, 1114, 1116, and 1129. In the last section he says that the principle applies to gas companies. The author's conclusions accord with the cases above cited. In fact, respondent has furnished no cases to the contrary.

It is said, however, that when a contract which was *ultra vires* has been performed on one part, the other is then estopped to plead that the contract was *ultra vires.* Here, however, the contract was void, because against public policy. In such cases courts will not give relief to either party.

Respondent contends that the rule is different as to corporations, and some cases seem to sustain the claim. It is impossible to see why there should be a difference in such cases because one party is a corporation. It is sometimes said, however, that a contract of a corporation is against public policy when it is simply *ultra vires,* because it is against public policy that a corporation should assume to exercise powers not granted. In such case it is simply an executed *ultra vires* contract. But it may also be an attempt to do that which is unlawful without reference to the corporate franchise, a contract which would be unlawful in a natural person. In such case the contract of the corporation is subject to the same rule which obtains in the case of individuals.

But it would make no difference here. The lessee, it is found, made nothing from the lease. The rule is the same that it would have been had the corporation been sued.

Says Morawetz on Private Corporations, section 715: "If money or property is given to a corporation under a contract which is void because the agent assuming to represent the corporation in the transaction had no authority to bind it, the corporation is liable to account for the money or other property received. . . . . Thus in *Burges and Stocks case,* 2 Johns. & H. 441, the directors of a life assurance company had issued policies of

marine insurance, and applied the premiums to the use of the company. Upon winding up the company the holders of the policies were held not to be entitled to prove for losses, but were allowed the amount of the premiums paid. Vice-Chancellor Page-Wood said: 'They had no consideration for the premiums they paid. The directors, it is true, had no power to issue marine policies, but they had power to receive money, and apply it for the benefit of the company. It is proved that they did so receive and apply these premiums, and the amount might have been recovered even at law as money had and received.'"

So, he says, a corporation cannot be charged with a loan of money made by its directors without authority, but, if any portion of the money has been applied to the proper uses of the company, it may be held liable to that extent at least. It is said: "The liability of the company does not, in such case, arise from the contract entered into by the directors, but from the equitable right of the lender to recover his money, which has gone to swell the company's assets."

I think this is the principle which underlies most of the cases upon this subject, although forced to admit that some are not consistent with it.

This action is on the contract to recover an amount of money which the lessee guaranteed the property would pay, but which it did not. It is not for any amount of benefit which he received from the contract. It is found that he received no benefit upon it. The fact that there was a consideration which would prevent the contract from being a *nudum pactum* for the want of it does not make a case of benefits to be paid for, where a contract is *ultra vires*. And the contract being against public policy should not be enforced.

I recommend that the judgment be set aside and judgment on the findings ordered for defendants.

HAYNES, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion, the judgment is set aside, and judgment on the findings ordered for defendants.

　　　　　　Garoutte, J., Harrison, J., Van Fleet, J.

Hearing in Bank denied.