[S. F. No. 755.    Department Two.—December 17, 1897.]

334:(M) 53 Pac 741

## SAMUEL G. MURPHY, Respondent, v. PACIFIC BANK, Appellant.

SAVINGS BANK—CHARTER—AMENDMENTS—COMMERCIAL BUSINESS—DEPOSITORS NOT STOCKHOLDERS PREFERRED—BY-LAWS.—A savings bank organized under the banking act of 1862, which had the required capital stock contemplated by the amendments of 1864, was authorized by those amendments to engage in commercial business; but the original act as thus amended constituted its charter, and, in the absence of the adoption of a by-law, authorized thereby, extending the same security to depositors who were stockholders as to other depositors, the provisions of the act giving depositors who were not stockholders a prior claim upon the assets applies to savings banks who were doing a commercial business; and it was competent for its stockholders, either by acquiescence in the terms of the statute or by an express provision in its by-laws, to assure such preference to nonstockholding creditors.

ID.—LIABILITY OF STOCKHOLDERS—UNCONSTITUTIONAL EXEMPTION—INDEPENDENT PROVISION.—The unconstitutional exemption of stockholders of savings banks from liability under the act of 1862, was an independent provision, and did not affect or annul the provision declaring a preference in favor of nonstockholding creditors in the distribution of the assets.

ID.—CERTIFICATE OF DEPOSIT TO STOCKHOLDER.—The fact that a certificate of deposit was issued to a stockholder of a savings bank doing a commercial business, does not determine the character of the business transacted by the bank. Such certificates are usual with commercial banks, and, under section 576 of the Civil Code, may be issued by savings and loan corporations.

ID.—CONSTITUTIONAL LAW—FORMATION OF CORPORATIONS UNDER GENERAL LAWS—CHANGE OF LEGISLATION AS TO SAVINGS BANKS.—The fact that the act of 1853 for the incorporation of savings banks did not postpone the claims of depositors who were stockholders, as was provided in the subsequent act of 1862, does not render the latter act unconstitutional, and its general and uniform operation is not affected because it authorizes corporations to adopt or reject the provision for such postponement.

ID—PARTIAL REPEAL OF PRIOR INCORPORATION ACT—EFFECT OF CODE.—The act of 1862 was so far repealed by section 288 of the Civil Code that no new corporations could be formed under that act; but it remained in force so far as corporations theretofore formed were concerned, not only to sustain their existence, but also to fix their character, and define their powers, duties, obligations, and liabilities, except so far as modified by inconsistent code provisions relating to such corporations, unless they should elect to come under the code provisions.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion.

Sawyer & Burnett, for Appellant.

H. A. Powell, and W. A. Dow, *Amic Curiæ,* representing certain Depositors of Appellant.

Roger Johnson, for Respondent.

HAYNES, C.—The defendant, a banking corporation, closed its doors on June 23, 1893, being then insolvent, and on November 3, 1893, was duly declared insolvent in a proceeding taken under section 11 of the bank commissioners' act, and since that time has been in liquidation, and has declared and paid six dividends of five per cent each on the unsecured claims of its depositors and creditors, exclusive of creditors who are stockholders, and future dividends amounting to ten or fifteen per cent are expected to be paid.

This action was brought to recover a judgment against the defendant for the sum of $73,928.10, in which sum, the plaintiff alleged, the defendant became indebted to James M. McDonald on March 23, 1893, for moneys theretofore loaned to it by said McDonald, who at all said times was and still is a stockholder; that said demand is unsecured, and that said McDonald sold and assigned said demand to the plaintiff in good faith and for value. The prayer was for judgment in said sum, that he be paid thirty per cent thereof, the amount of dividends already paid to others, and be allowed to participate in all future dividends.

The defendant, in its first defense, denied that said money was loaned to the bank, and alleged that on February 25, 1893, McDonald had on deposit with defendant $125,000 as a deposit, and not otherwise; that for said sum a certificate of deposit was then issued; that on March 23, 1893, defendant paid McDonald $50,000, and gave a new certificate for $75,000, upon which there remains unpaid the sum named in the complaint.

For a second answer, it was alleged that defendant was incorporated under "An act to provide for the formation of corporations for the accumulation and investment of funds and savings,"

approved April 11, 1862, and a copy of its articles of incorporation is attached as an exhibit, the corporate name being "Pacific Accumulation and Loan Company"; that in March, 1866, an act was passed authorizing said corporation to change its name to that of "Pacific Bank," and said act and the certificate of said change of name is also set out as an exhibit; that from that time its business has been conducted under the name of the Pacific Bank; that plaintiff's assignor, James M. McDonald, for ten years or more last past owned, and there is still standing in his name, 1,738 shares of the capital stock of said bank, upon which he drew dividends up to January 1, 1893; that by said act of April 11, 1862, the capital stock and assets of the corporation were made a security to depositors who are not stockholders, and that the by-laws of defendant did not at any time provide that said security should extend to deposits made by stockholders; that said plaintiff took said assignment long after and with full knowledge of defendant's insolvency, and has no right to maintain this action for dividends.

To this answer the plaintiff demurred, the demurrer was sustained, and judgment entered for the plaintiff as prayed for, and defendant appeals.

It is not contended that the plaintiff, as the assignee of McDonald, who is a stockholder in said bank, is in any better situation than his assignor would have been; and therefore, for convenience, we will consider the plaintiff as a stockholder.

The plaintiff alleges in his complaint that for twenty years or more the defendant was engaged in the transaction of a general commercial banking business exclusively. This allegation is not denied, but the defendant contends that the powers, duties, and liabilities of the corporation, and the rights of creditors who are not stockholders, and of those who are, must be determined by the statute and the articles of incorporation; that if these give a preference to creditors who are not stockholders, that it is not in the power of the stockholders or the corporation to change or affect these relative rights by doing a business not authorized by the statute or the articles of incorporation; whilst, on the other hand, it is contended that being *de facto* a commercial bank the defendant is estopped from claiming to be a savings bank. Other contentions will be noticed as we proceed.

That part of section 10 of the act of 1862 (Stats. 1862, p. 201), material to the present controversy, is as follows: "And it shall not be lawful for the corporation or the directors to contract any debt or liability against the corporation for any purpose whatever, but the capital stock and the assets of the corporation shall be a security to depositors who are not stockholders, and the by-laws may provide that the same security shall extend to deposits made by stockholders."

It is alleged in the answer that no by-law was ever passed giving such security to stockholders for their deposits, and this is admitted by the demurrer.

The certificate of incorporation recited that the corporation was formed under the provisions of said act of 1862, and in the name of the "Pacific Accumulation Loan Company," and "that the object for which it is formed is that of aggregating the funds of the members of said corporation and others, and preserving and safely investing the same for their common benefit in loans on real estate, mining claims, mining and other securities, public and private, in the manner, on such terms, at such rates of interest, and for such further consideration as may be determined from time to time by the board of directors."

The act of March 31, 1866 (Stats. 1865-66, p. 620), authorizing the name of the corporation to be changed to "Pacific Bank," did not confer any special powers or privilege—except to change its name—but expressly provided that it shall "enjoy all the corporate rights, powers, and privileges enjoyed heretofore and now under the laws of this state, and shall be subject to all the corporate obligations and responsibilities created by their said act of incorporation, or existing under the name of said Pacific Accumulation Loan Company."

The change of name, therefore, did not relieve the corporation from any of the provisions of the act of 1862; but the question is, whether the change in the character of its business has relieved the corporators from that provision of the act which gave nonstockholding creditors a preference in the distribution of its assets.

The question whether the Pacific Bank should be held to be a savings bank or a commercial bank has been raised in at least two former cases, in each of which it was left undecided for the

reason that its decision was not necessary to the decision of those cases. (*Crane v. Pacific Bank*, 106 Cal. 68; *McGowan v. McDonald*, 111 Cal. 57; 52 Am. St. Rep. 149.)

Nor do I think it necessary in this case to decide that question upon the facts assumed by counsel, viz., that the statute of 1862, under which the corporation was formed and existed, did not authorize the transaction of any other business than that of a savings bank.

In neither of the cases above mentioned, nor in this case, have counsel referred to the important amendments of said act of 1862 made by the act of March 12, 1864 (Stats. 1863-64, p. 158), and hence we are without the benefit of their views as to the scope and effect of the amendatory act.

The changes in the statute material to be noticed are the following:

Section 4 of the original act, in defining the powers of banks organized thereunder, provided, by the fifth subdivision, as follows: "5. To loan and invest the funds of the corporation, to receive deposits of money, and to loan and invest the same, to collect the same with interest, and to repay such deposits with so much of the earnings and interest as the by-laws may provide."

This subdivision was amended by inserting after the word "deposits," where last used, the words "without interest, or"; thus making it read: "And to repay such deposits without interest, or with so much of the earnings and interest as the by-laws of the corporation may provide."

Section 5 of the original act was as follows: "No corporation formed under this act shall loan any money without adequate security on real and personal property, and no deposits shall be loaned or invested for a period exceeding six years."

The section as amended reads:

"Sec. 5. No corporation formed under this act shall loan any money without adequate security on real and personal property except when any such corporation shall, by a by-law to that effect, adopted by a two-thirds vote of all the stock of the company subscribed and taken, authorize the making of loans to persons of reputed solvency, when ordered by a vote of not less than three-fourths of all the directors thereof; provided, that this exception shall apply only to corporations having a capital stock

or reserved fund, or both capital stock and reserved fund, paid in, of not less than three hundred thousand dollars; and no deposits shall be loaned or invested for a period exceeding six years."

The third subdivision of section 13 of the original act provided, among other things, that "said corporation shall not, directly or indirectly, deal or trade in buying or selling any goods, wares, or merchandise whatever, except such personal property as may be requisite for its immediate accommodation for the convenient transaction of its business, and except gold and silver bullion and United States mint certificates of ascertained value and evidences of debt issued by the United States government."

The section as amended, after the words "for the convenient transaction of its business," added, "and except bonds, securities, or evidences of indebtedness, public or private, gold and silver bullion," etc., and added the proviso that it should apply only to corporations having a capital stock or reserved fund, or both.

The first of these amendments was intended to permit ordinary deposit accounts payable upon demand without interest; the amendment to section 5 authorized the adoption of a by-law under which loans might be made to persons of reputed solvency, without security on real or personal property, and the amendment to section 13, subdivision 3, authorized the corporation to deal in bonds, securities, or evidences of indebtedness, public or private; and these include all kinds of commercial paper and securities.

Whether these amendments, passed in 1864, had anything to do with the change of the name of the bank authorized by the next legislature we need not inquire; but I think it clear that these amendments authorized the bank to continue its existence as a savings bank; or to do a commercial business, or to conduct both under the management of the same board of directors. This bank had the required capital stock, and was therefore within the amendments of 1864. But, though it availed itself of these amendments and from that time on conducted only the business usually conducted by a commercial bank, the act as thus amended was its charter, and defined for the whole period

of its subsequent existence the terms and conditions constituting
its relationship and liability to depositors, unless changed by
subsequent legislation, and that provision of the act giving de-
positors who are not stockholders a prior claim upon the assets
over depositors who are, not having been stricken out or re-
pealed, is thus made applicable to banks organized under it and
doing business as commercial banks; and as that act gave the cor-
poration the option of extending the same security to deposi-
tors who were also stockholders, by the simple adoption of a
by-law, their failure to adopt such by-law was well nigh equiva-
lent to an express agreement that its stockholders would yield
to other depositors the preference named in the statute; and as
there is no provision of the constitution, or of the code or other
statute, prohibiting it, it is competent for the stockholders,
either by acquiescence in the terms of the statute under which
the corporation is formed, or by an express provision in its by-
laws, to assure to nonstockholding creditors the preference here
in question.

It is said, however, that "if the rights of the parties are to be
determined by section 10 of the act of 1862, then McDonald is
not only personally liable as a stockholder for his proportion of
all the debts and liabilities of the bank, but he is to be excluded
as a depositor from any share in the dividends declared by the
board of directors."

It is sufficient to say that the personal liability of stockhold-
ers in this and all other corporations existed at and before the
time the act of 1862 was passed; but the legislature saw fit, not-
withstanding that liability, to declare a preference in favor of
nonstockholding creditors in the distribution of the assets. It is
true that the legislature undertook, by section 27 of said act, to re-
lieve stockholders in corporations formed under it from personal
liability, but that section violated section 36 of article IV of the
constitution of 1849, which imposed such personal liability (*Mc-
Gowan v. McDonald*, 111 Cal. 57; 52 Am. St. Rep. 149); but it
was further held that said section was an independent provision,
and that its unconstitutionality did not affect the other provi-
sions of the act.

It is alleged in the answer that the claim of the plaintiff is
based upon a certificate of deposit; but that does not determine

the character of the business transacted by the bank. Such cer-
tificates are usual with commercial banks, and under the pro-
visions of section 576 of the Civil Code may be issued by sav-
ings and loan corporations.

It is further contended by respondent that the act of 1862 is
unconstitutional; that the act of 1853, providing for the incorpo-
ration of savings banks, did not postpone the claims of depos-
itors who were stockholders as provided in the act of 1862; that
hence there were two classes of savings banks, and that this con-
dition of things is obnoxious to the constitutional provision that
"all laws of a general nature shall have a uniform operation."
But the constitution of 1849 also provided that corporations
may be formed under general laws, and that such general laws
may be altered from time to time or repealed (Const., art. IV,
sec. 31); and the later act declared that all acts and parts of
acts in conflict with it "are hereby declared to be inoperative."
But this provision of the act of 1862 was not inconsistent with
the act of 1853. It gave savings banks the option of giving
their depositors greater security for their deposits, thus strength-
ening the credit of the banks and promoting their business.
The general and uniform operation of a statute is not affected
because it authorizes corporations to adopt or reject a particu-
lar provision. The Civil Code authorizing the incorporation of
savings banks authorizes them to be formed upon either of two
radically different plans, viz., with or without a capital stock.
(*Los Angeles v. State Loan etc. Co.*, 109 Cal. 396.) The general
operation of the statute is not affected if it gives to all cor-
porations of its kind or class the opportunity of adopting either
the one or the other of two different provisions if neither con-
flicts with the constitution.

It is further contended by respondent that the act of 1862 was
repealed by section 288 of the Civil Code.

That said act was repealed so far that new corporations could
not be formed under it there is no doubt; but, so far as corpora-
tions theretofore formed under it were concerned, it remained
in force, not only so far as might be necessary to sustain their
existence as corporations, but to fix their character, define their
powers, duties, obligations, and liabilities, except in so far as
these were modified, altered, or repealed by inconsistent code
provisions relating to such corporations.

Said section provides: "No corporation formed or existing before 12 o'clock noon of the day upon which this code takes effect is affected by the provisions of part IV of division 1 of this code, unless such corporation elects to continue its existence under it as provided in section 287; but the laws under which such corporations were formed and exist are applicable to all such corporations, and are repealed subject to the provisions of this section."

Section 287 of the Civil Code, above referred to, after providing for the manner in which pre-existing corporations may make and certify their election to continue their existence under the code, provides: "And thereafter the corporation shall continue its existence under the provisions of this code which are applicable thereto, and shall possess all the rights and powers and be subject to all the obligations, restrictions, and limitations prescribed thereby."

It will be observed that as to corporations existing at the time the code took effect and which elect to continue their existence under it, "the provisions of the code which are applicable thereto" govern them, and that they "possess all the rights and powers" and are "subject to all the obligations, restrictions, and limitations prescribed thereby," and that corporations which do not so elect are not "affected by the provisions of part IV of division 1, . . . . but the laws under which such corporations were formed and exist are applicable to all such corporations."

The distinction here made between those corporations which should elect to come under the code provisions and those that did not is clearly manifest. If no such distinction was intended, it would have been quite sufficient to say that no corporation shall cease to exist because of the adoption of the code, but thereafter all corporations existing at the time the code takes effect shall be governed by its provisions alone; and there would have been, in that case, no necessity or propriety for an election on the part of the corporation to come under its provisions. This construction is supported by *Robinson v. Southern Pac. Co.*, 105 Cal. 549, 550, though the question was not fully considered.

Respondent cites the case of *Market Street Ry. Co. v. Hellman*, 109 Cal. 571, which appears to give a different construction to said section 288 of the Civil Code. The question here involved, however, was not necessary to a decision of that case. There

several street railway corporations were consolidated, one of which was in existence before the code went into operation, and the question was as to the action of that corporation in effecting the consolidation, which was made under the provisions of the Civil Code. As will be seen by reference to page 584 of the report, the statute of 1861 contained substantially the same provisions in relation to consolidation as section 473 of the Civil Code, and therefore it was immaterial whether the power of that corporation to make the consolidation was under the code or under the prior statute.

Here the conditions are slightly different. The provisions in the act of 1862 giving a preference to nonstockholding creditors is re-enacted in section 573 of the Civil Code in substantially the same language, under the title relating to "savings and loan corporations." If, therefore, the Pacific Bank is regarded as a savings bank, the question whether the old statute is preserved or not is clearly immaterial; but if it be regarded as a commercial bank the provision in question does not exist, if it be true that the code absolutely and unconditionally repeals all former statutes under which it existed except so far as was necessary to mere corporate existence.

I think the court below erred in sustaining the demurrer, and that the judgment should be reversed, with directions to overrule it.

Chipman, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is reversed, with directions to overrule the demurrer.           Garoutte, J., Harrison, J., McFarland, J.

Hearing in Bank denied.