[S. F. No. 1685.   Department One.—November 28, 1900.]

SAMUEL G. MURPHY, Appellant, v. PACIFIC BANK et al., Respondents.  SAN FRANCISCO LAUNDRY ASSOCIATION et al., Intervenors.

INSOLVENT BANK—PREFERENCE OF DEPOSITORS NOT STOCKHOLDERS—LOAN TO BANK BY STOCKHOLDER.—In an insolvent bank incorporated under the act of April 11, 1862, the claims of depositors not stockholders are preferred over those of depositing stockholders, in the absence of a by-law entitling them to share equally with them. But if the stockholder is not a depositor, and has loaned the money to the bank, he is entitled to share equally in the assets with other creditors.

ID.—CONSTRUCTION OF ACT OF 1862—"DEPOSITORS"—ORDINARY CERTIFICATES OF DEPOSIT—LOAN NOT REPRESENTED.—In the act of 1862, the term "depositors" is intended to include not only those who have made deposits in the bank subject to check, but also the holders of ordinary certificates of deposit, not subject to check, which are in the nature of a receipt for a deposit executed by the bank, reciting that a sum specified has been deposited in the bank by the depositor payable to himself or order, upon return of the certificate properly indorsed. Such certificates, though negotiable and payable immediately, are not notes, and

do not represent a loan, nor bear interest not stipulated, but represent the money deposited in the bank to be retained until demanded.

ID.—CONSTITUTIONALITY OF ACT OF 1862—CLASSIFICATION OF DEPOSITORS.— The act of 1862 is constitutional and valid, and is not subject to the objection that it improperly classifies the depositors in a bank, and subjects individuals of the class who are stockholders to special burdens, from which other depositors are exempt. The stockholders constitute the corporation, and are entitled to share in the profits derived from deposits made by those not stockholders, who are merely creditors of the bank; and depositors who are stockholders are not in the same class with depositors who are not stockholders.

ID.—FINDING OF INSUFFICIENT ASSETS—JUDGMENT UPON STOCKHOLDER'S CERTIFICATE—PROVISION FOR STAY.—In an action against the bank by the assignee of a certificate of deposit issued to a stockholder, where the court found that the bank was insolvent, and that its assets were insufficient to pay the preferred depositors not stockholders, in rendering judgment for the plaintiff, such preference could not be secured otherwise than by a stay of the judgment until the preferred creditors should be paid, and it is not objectionable to insert such provision for stay in the judgment. If it amounts to a perpetual stay, because of the insufficiency of the assets, plaintiff is not injured thereby.

ID.—CHANGE OF LOAN TO ORDINARY CERTIFICATES — NEW DEPOSIT.—A stockholder who had made a loan to the bank, and received a time certificate, payable in one year, bearing interest, and after its maturity and part payment had surrendered it as paid, and then received an ordinary certificate of deposit for the balance, and upon further payment received another like certificate, which was outstanding when the bank became insolvent, cannot then be considered as a lender of money to the bank, or entitled to share in its assets with preferred depositors not stockholders. The legal effect of the transactions was that each ordinary certificate of deposit issued represented a new deposit made at its date.

ID.—ASSIGNMENT OF CERTIFICATE—KNOWLEDGE OF INSOLVENCY OF BANK— ASSIGNEE NOT PROTECTED.—Where the certificate of deposit held by the stockholder when the bank became insolvent was assigned thereafter to the plaintiff, who took the assignment with knowledge that the bank was insolvent, and was in liquidation under the bank commissioners' act, it being admitted that the assignor was a stockholder, the plaintiff is not protected, and is not entitled to share equally with preferred creditors not stockholders.

ID.—PROTECTION OF DEPOSITING STOCKHOLDERS UNDER BY-LAW—CHANGE OF BY-LAW — REVISION.—Where an original by-law of the bank entitled stockholders, who were depositors, to share equally in the assets with other depositors, and a subsequent revision of

the by-laws was made, in which that by-law was omitted, and the revised by-laws, when adopted, were declared to be the by-laws of the bank, without suggestion that the new by-laws were amendatory of the former by-laws, such original by-law ceased to exist, and did not thereafter apply to the protection of depositing stockholders.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Roger Johnson, and A. N. Drown, for Appellant.

Sawyer & Burnett, for Pacific Bank, Respondent.

H. A. Powell, and W. A. Dow, for Intervenors, Respondents.

VAN DYKE, J.—The Pacific Bank, being then insolvent, closed its doors on June 23, 1893, and on November 3, 1893, was duly declared insolvent in a proceeding taken under section 11 of the bank commissioners' act, and since that time has been in liquidation, and at the time this action was commenced had paid six dividends of five per cent each on the unsecured claims of its depositors and creditors, exclusive of creditors who were stockholders, and it was then expected that future dividends amounting to ten or fifteen per cent would be paid.

This action was brought in July, 1896, by the plaintiff, alleging, in substance, that on March 23, 1893, the defendant became indebted to James M. McDonald in the sum of $73,928.10, for moneys theretofore loaned to it; that at all said times said McDonald was a stockholder in said bank; that said demand was unsecured; that it was payable on demand; that payment of dividends and of the debt had been demanded, and that said James M. McDonald had sold and assigned said demand to the plaintiff.

The answer of defendant, among other things, alleged that for ten years or more last past said McDonald was, and still is, a stockholder in said bank, owning 1,738 shares; that said bank was incorporated under the act of April 11, 1862; that section 10 of said act (Stats. 1862, p. 201) provided that the capital stock and assets of the corporation shall be a security to depositors who are not stockholders, and that at no time did

the by-laws of defendant provide that the same security should extend to deposits made by stockholders, as was permitted by said act, and denied that said money was loaned to the bank by McDonald, and alleged that it was a deposit for which a certificate of deposit was issued.

Plaintiff demurred to the answer, the demurrer was sustained, and judgment rendered for plaintiff. Upon appeal said judgment was reversed, with directions to overrule the demurrer. (See *Murphy v. Pacific Bank,* 119 Cal. 334.) The intervenors are unsecured creditors who are entitled to share in the dividends.

The complaint in intervention and the answers thereto do not change the issues of fact, and need not be specially noticed. Upon the trial the court found against the plaintiff, and judgment was entered against him.

This appeal is by the plaintiff from a portion of the judgment, and from an order denying his motion for a new trial.

The controlling question of fact in the case is whether the said sum of $73,928.10 was loaned by said J. M. McDonald to the Pacific Bank, or whether it was a deposit. If it was a loan the plaintiff was entitled to recover. If it was a deposit he was not entitled to share in the dividends, as was held upon the former appeal, unless it appeared that the by-laws gave to depositors who were stockholders the same right to share in the assets as was given depositors who were not stockholders.

J. M. McDonald, plaintiff's assignor, testified, in substance, that on July 25, 1890, he had to his credit in the Pacific Bank about $55,000; that on that day he collected an outstanding loan of a little over $100,000, and deposited it in the defendant bank, which increased his balance to about $155,028.75. That on the next day R. H. McDonald, who was then president of the Pacific Bank, proposed that witness should loan $150,000 to the Pacific Bank for a year, for which he said the bank would pay six per cent interest; that he agreed to do so and drew his check for that amount, which check was put in evidence; that he received from the bank as evidence of his deposit or loan an instrument of which the following is a copy:

CXXX. Cal.—35

"Series C, No. 26,253.    Pacific Bank.    Oldest Chartered Commercial Bank on the Pacific Coast.

"San Francisco, July 26, 1890.

"Captain James M. McDonald has deposited in this bank one hundred and fifty thousand dollars ($150,000) in gold ·coin, payable to himself or order on return of this certificate properly indorsed.

"This certificate to run for one year from date and not to mature before, and to bear interest at the rate of six per cent per annum, payable monthly.    Not subject to check.

"(Signed)    FRANK McDONALD,

"Cashier.

"R. H. McDONALD,

"President."

The latter part, commencing with "this certificate to run," was in writing; the preceding part was printed, as were the words "not subject to check."    It is indorsed "J. M. McDonald," and stamped with the canceling stamp of the bank, "Paid February 25, 1893."

Said witness further testified that on February 25, 1893, he asked for and received $25,000, and surrendered the foregoing certificate, and received from the bank another certificate for $125,000, of which the following is a copy:

"Pacific Bank.    Series C, No. 36,094.    Oldest Chartered Commercial Bank on the Pacific Coast.

"San Francisco, Cal., February 25, 1893.

"Capt. James M. McDonald has deposited in this bank one hundred and twenty-five thousand dollars ($125,000) in gold coin, payable to himself or order on return of this certificate properly indorsed.    Not subject to check.

"W. S. MORSE,

"Teller,

"R. H. McDONALD, Jr.,

"Cashier."

Said certificate is also indorsed "J. M. McDonald," and is stamped, "Paid March 23, 1893."    He also testified that on March 23, 1893, he had use for money and asked for and received a payment of $50,000 on account, and the bank issued another certificate for $75,000, dated on that day, numbered

series C, No. 36,322, and in the same form as the last preceding one. Indorsed upon it, however, is a credit of $1,071.90. It was admitted that he assigned the last certificate to the plaintiff about thirty days before suit was commenced, and that plaintiff knew of the insolvency of the bank, and that it was in liquidation at and before said demand was assigned to him.

Several interrogatories were put to the witness by counsel for plaintiff touching the question of interest upon the last two certificates, to which counsel for defendant objected, the objections were sustained and plaintiff excepted. These are mentioned in a general way by appellant, but no discussion of them is attempted. We have examined them, however, and think the objections were properly sustained.

It may be conceded, for the purposes of this opinion, that the original transaction on July 25, 1890, was a loan to the bank by J. M. McDonald. The certificate executed to him by the bank specified, in a clause added to the ordinary certificate of deposit, that it should run for a year, and should not mature sooner, and should bear interest at six per cent payable monthly. On February 25, 1893, this certificate was indorsed, surrendered, and stamped "Paid." On the same day the bank paid to McDonald $25,000 in money and gave a certificate of deposit from which was omitted all reference to interest or to any specified length of time it should run. It simply recited that he had "deposited in this bank" $125,000, payable upon return of the certificate properly indorsed. He might have returned in ten minutes and demanded his money. The legal effect of the transaction, as shown by the instruments, was that upon the presentation of the first certificate, duly indorsed, the bank paid McDonald $150,000, and that he deposited in the bank on that day $125,000. These remarks apply equally to the payment of the second certificate, and the deposit of $75,000 evidenced by the third certificate. It is incredible that after requiring a special certificate for the loan of $150,000 he should continue the loan of $125,000, part of said first named sum, upon an ordinary certificate without a stipulation for interest, or indorsing the payment upon the original certificate.

Appellant contends, however, that a certificate of deposit in

the ordinary form, such as the second and third certificates above set out, is a promissory note, and assumes that it was for money loaned, and therefore bore interest at the rate of seven per cent, no rate being specified. The improbability of a bank paying seven per cent interest on demand notes is apparent. But appellant expressly admits that a deposit in a commercial bank does not bear interest, in the absence of a stipulation that it shall bear interest; and these certificates upon their face show they were issued by "the oldest chartered commercial bank on the Pacific coast."

But a certificate of deposit issued by a bank is not known as a promissory note, though it is negotiable, is for a sum certain, payable to a specified person, or order, and, no time of payment being specified, is payable immediately. (Civ. Code, sec. 3099.) The same code, however (Civ. Code, sec. 3095), declares "there are six classes of negotiable instruments, namely: 1. Bills of exchange; 2. Promissory notes; . . . . 6. Certificates of deposit"; thus distinguishing between them by placing them in separate classes.

It is sufficient for the purposes of this case to say that in the business world, as well as in legislation and the decisions of the courts, certificates of deposit are understood to represent money left with a bank or banker, and which is to be retained until the depositor demands it, the certificate being in the nature of a receipt executed by the bank therefor, in which is usually recited, as in the certificate under consideration, the fact that money has been deposited in the bank by the person to whom the certificate is issued; and we therefore conclude that in the act of 1862, under which the Pacific Bank was organized and existed, that the term "depositors" was intended to include such deposits as well as those made upon open account and subject to check, and that such certificates do not imply a loan in the ordinary sense, nor create the ordinary relation of debtor and creditor evidenced by a promissory note.

Appellant suggests that there is no averment or finding that he had any notice or knowledge that McDonald, his assignor, was a stockholder at the time said certificate was issued. But it is expressly alleged in the complaint that at all of said times McDonald was a stockholder in said bank, and, that allegation not being denied by the answer, no finding was required. He

took the transfer of the certificate long after the failure of the bank, with knowledge that its insolvency had been adjudicated and that it was in liquidation under the statute known as the "bank commissioners' act," and to avoid the force and effect of section 10 of the act of 1862, under which the bank was organized and existed, he alleged that the indebtedness was for money loaned. If the bank were solvent, and a going concern, it could make no difference in its liability whether the certificate were for money loaned or for money deposited; but being insolvent and in liquidation it is required to prefer such creditors as are, under the law, entitled to preference; and, even if that were not true, the intervenors who are creditors claiming an interest in the assets as such can properly litigate the question of priority.

It is again urged that the defendant is not a savings bank. That question need not be discussed. It was held upon the former appeal that "the Pacific Bank, under the act of 1862, and the amendments made by the act of March 12, 1864, was authorized to continue business as a savings bank, or to do a commercial business, or to conduct both under the management of the same board of directors." (See *Murphy v. Pacific Bank, supra.*)

Appellant further contends that the by-laws do provide that the capital stock and assets shall be a security to all depositors whether stockholders or not.

The evidence upon this point is to the effect that in 1867 the original by-laws were amended whereby the capital stock and assets were made a security "to all depositors, both stockholders and nonstockholders"; that in 1876 amended by-laws were adopted containing the same provision. But the evidence shows that on January 11, 1886, the annual meeting of the stockholders was held, and adjourned to February 8th, on which day "the committee on revision of by-laws reported," and at an adjourned meeting, held the next day, their report was considered. The minutes recite that "the proposed new by-laws having been submitted in writing and filed with the secretary, and it being necessary that at least one month should elapse before the same can be adopted," the meeting was on motion adjourned until March 11, 1886, on which day by-laws consist-

ing of thirteen articles were adopted, "and the president then declared that more than two-thirds of the capital stock of the bank having voted in favor of the amended by-laws, the same are hereby declared to be the by-laws of the Pacific Bank."

These by-laws were written out in full in the minutes and attested by the president and secretary, and contain no provision making the capital stock or assets security to depositors, whether stockholders or not.

Appellant contends that the provision in the former by-laws which made the capital and assets a security to all depositors, whether stockholders or not, not being mentioned or referred to in the amended by-laws, was continued in force.

We think this contention cannot be sustained. Upon the face of the minutes of these meetings of the stockholders it appears that a committee was appointed to revise the by-laws; that "new by-laws" were submitted and adopted and declared "to be the by-laws of the Pacific Bank." These by-laws appear to be complete and full, and nowhere in the by-laws so adopted is there any suggestion that the new provisions are amendatory of the former by-laws.

Again, it is contended that the act of 1862 is unconstitutional. It was so contended upon the former appeal, upon certain grounds then urged, and it was held to be not unconstitutional. (*Murphy v. Pacific Bank, supra.*)

It is now contended that the said provision of the act of 1862 is unconstitutional for the reason that "it selects particular individuals from a class and subjects them to peculiar rules and imposes upon them special burdens from which others in the same class are exempt."

But said provision is not obnoxious to the constitution upon that ground. Depositors who are stockholders are not in the same class with depositors who are not stockholders. The stockholders constitute the corporation and share in the profits to be derived from deposits made by nonstockholders, while the latter do not. They are purely creditors and have no other relation to the bank; while the stockholders are creditors as to their deposits and as members of the corporation, and through it are debtors to the nonstockholding depositors, and

no wrong or hardship is done them when the profits derived from the deposits and other assets of the corporation are applied first to the payment of the demands of those who are not stockholders.

Objection is also taken by appellant to the conclusions of law and to that part of the judgment quoted below.

The judgment is that plaintiff recover from the Pacific Bank the sum of $73,928.10, with interest from June 23, 1893; "that said sum and interest shall not be payable until after the payment in full of all indebtedness due by the defendant to its depositors who are not stockholders, and execution is stayed upon this judgment until that time; and it is further adjudged that said plaintiff do not recover any dividends on said sum or interest thereon until after payment of all indebtedness due by defendant to its depositors who are not stockholders"; and that neither party recover costs.

We see no valid objection to the portion of the judgment appealed from. The part not appealed from is an ordinary judgment for the recovery of a specified sum of money, being the amount remaining unpaid upon the certificate of deposit with interest. But the court found that the defendant was and is insolvent and in liquidation under a judgment in the case of *People v. Pacific Bank*, entered November 3, 1893, and that its assets were and are insufficient to pay those depositors who were not stockholders, and that they were entitled to be first paid. This preference could not be secured otherwise than by a stay of the judgment until the preferred creditors should be paid. No objection is made to the fact that the stay is made part of the judgment, rather than by a separate order, but it is said that it is repugnant to the judgment because it amounts to a perpetual stay. Plaintiff had a just demand against the defendant for the amount of his certificate, and the court could not say that he was not entitled to judgment, but could and did say that he was not entitled to enforce it against the bank until the preferred creditors were paid. That it may amount to a perpetual stay is true, but if it does it will be because the assets are insufficient to pay the preferred claims; and, if so, plaintiff is not injured.

The findings are justified by the evidence, and we find no error that would justify a reversal.

The judgment and order appealed from are affirmed.

Harrison, J., and Garoutte, J., concurred.