LAIDLAW v. PACIFIC BANK (McGOWAN, Intervener).*

S. F. No. 2491; February 15, 1902.

67 Pac. 897.

**Savings Banks—Power to Contract Debts.**—Act of April 11, 1862, section 10, providing that it shall be unlawful for a savings bank corporation or its directors to contract any debt or liability against the corporation for any purpose whatsoever, is to be construed in connection with the remainder of the act, which authorizes such corporation to purchase a lot and building for its business, and to employ and compensate help, and to incur other expenses, and in connection with the amendatory act of March 12, 1864, conferring on such corporations power to do a commercial banking business, buying bonds, securities, etc.; and hence the former act does not prevent the bank from incurring any liabilities whatsoever, but only those not authorized by the other legislation mentioned.

**Savings Bank.**—Where There is a Finding in an Action Against the bank by a creditor that a debt of the latter is for money expended by the creditor for the use and benefit of the bank and at its request, it will be presumed on appeal that the money was expended for purposes for which the bank could incur a liability.

**Savings Bank.**—Where the Debt of a Creditor of a Bank is for money expended for its benefit and at its request, it will not be heard, in an action by the creditor to recover the money, to deny liability on the ground that it could not legally be bound by a contract to pay.

**Savings Bank—Priority of Claims.**—Act of April 11, 1862, section 10, providing that the assets and stock of a savings bank shall be security to depositors who are not stockholders, does not give priority to the claim of a depositor who is not a stockholder over the claim of a creditor of the bank who is also a stockholder thereof.

APPEAL from Superior Court, City and County of San Francisco; Frank J. Murasky, Judge.

Action by Charles E. Laidlaw against the Pacific Bank. Mathew McGowan intervened. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

E. D. Sawyer (J. M. Burnett of counsel) for appellant; James M. Allen and Isaac Frohman for respondent; Roger Johnson for intervener.

*For subsequent opinion in bank, see 137 Cal. 392, 70 Pac. 277.

54

COOPER, C.—Appeal from judgment on the judgment-roll. The findings show that the appellant was incorporated under the name of "Pacific Accumulation Loan Company" under an act of April 11, 1862, entitled "An act to provide for the formation of corporations for the accumulation and investment of funds and savings" (Stats. 1862, p. 199), and that subsequently, by authority of an act of the legislature, it changed its name to that of "Pacific Bank." That at all times it had a capital stock of $1,000,000, divided into ten thousand shares of the par value of $100 each, all of which was subscribed and fully paid for; and up to the twenty-third day of June, 1893, said corporation was engaged in the transaction of a general commercial banking business exclusively. That prior to said last-named day the said corporation became insolvent, and at the time it so became insolvent it had about nine hundred depositors, who were not stockholders, and to whom it was then indebted in the sum of about $1,400,000 on account of deposits made by such depositors with said corporation. On October 16, 1893, after due proceedings, the said corporation was adjudged insolvent, under the act of March 30, 1878, creating a board of bank commissioners, and was prohibited from the further transaction of business, and ever since has been in process of liquidation under said last-named act. That since said corporation went into liquidation it has paid dividends amounting to forty per cent on the unsecured claims of its depositors and other creditors, and the remaining assets are of sufficient value to enable it to pay forty per cent to plaintiff and intervener upon the claim involved in this action, provided no other creditor is paid. That on the twenty-second day of June, 1893, the said corporation became and was indebted to R. H. McDonald, who owned four thousand seven hundred and eighty shares of the capital stock of said corporation, "in the sum of $97,003, for moneys theretofore paid, laid out, and expended by said McDonald for the use and benefit of said defendant, at its request." That said claim was and remains unsecured, and defendant promised and agreed to repay the same on demand, and, although demand has been made, the same has not been paid, nor any part thereof. That prior to the commencement of this suit the said McDonald sold and assigned the said claim to plain-

tiff, who is now the owner thereof, subject to the rights of the intervener. That at no time since the eleventh day of March, 1886, did the by-laws of appellant provide that the same security should extend to deposits made by its stockholders as was and is given to depositors who are not stockholders of appellant by section 10 of said act of April 11, 1862. That prior to the commencement of this action and the assignment to plaintiff, Mathew McGowan, the intervener, commenced an action against R. H. McDonald, procured a writ of attachment, and had the same levied upon the said demand so due to said McDonald, which levy was in all respects regular. That said intervener afterward procured judgment in due form against said McDonald for the amount hereinafter named, which judgment has not been paid. As conclusions of law the court found that plaintiff and intervener are entitled to a judgment, directing appellant to pay them a dividend of forty per cent upon the indebtedness so due to plaintiff upon the assigned claim of said McDonald, amounting to $45,925.25, of which amount plaintiff is entitled to $8,423.58, and intervener to $37,-501.67; and that plaintiff is entitled to a pro rata dividend with the other creditors, and depositors of any dividends that may hereafter be declared, after so paying plaintiff and intervener. Judgment was accordingly entered.

No question is made as to the amount of the judgment, or the division between plaintiff and intervener. It will therefore be wholly unnecessary to discuss any question as to the rights of the intervener for the reason that his rights are not questioned if the judgment entered is correct. It is claimed that the indebtedness found to be due plaintiff was and is ultra vires, and that the act of 1862 made the assets of the corporation preferred security to depositors who are not stockholders in the corporation. These two propositions we will discuss in the order named. The contention that appellant could not become indebted to McDonald is based upon a portion of section 10 of the act of April 11, 1862, which reads as follows: "And it shall not be lawful for the corporation, or the directors, to contract any debt or liability against the corporation for any purpose whatever." If literal and full effect is to be given to the words quoted, the corporation could not, under any circumstances, become legally indebted to anyone, or incur any liability of any

kind, for any purpose. Such an interpretation would create an irreconcilable conflict with various other provisions of the act, and would, in effect, prohibit the corporation from carrying on or conducting any business. The corporation could not, from the very nature of its organization, engage in any business, without incurring obligations. In receiving deposits it becomes the debtor of the depositor, and contracts a liability. Statutes must be construed so as to avoid conflict and absurd results, and to promote the objects of the legislature. It is the duty of courts to interpret statutes according to their true intent and meaning, collected from the whole, and every part thereof taken together. The intent, when so ascertained, must prevail, even over the literal sense of the terms, and control the strict letter of the law when the letter would lead to possible injustice, contradictions, and absurdity: Ex parte Ellis, 11 Cal. 224; People v. Craycroft, 111 Cal. 544, 44 Pac. 463. By an examination of the whole of the act of 1862 and the amendatory act of March 12, 1864 (Stats. 1863–64, p. 158), it is plain that the legislature intended that the corporations formed thereunder should have, and that they were given, power to incur all liabilities necessary to fulfill the objects and purposes thereof. A corporation formed under the act of 1862 is authorized, among other things, to purchase a lot and building in which to carry on business, to purchase necessary personal property, to employ competent persons to conduct its business and to compensate them for such services, to loan and invest the funds of the corporation and receive deposits of money, to repay such deposits with interest. It is provided in section 24 that upon application for dissolution the judge must be satisfied "that no indebtedness of the corporation exists, other than to depositors who have not demanded their deposits." It is therefore evident from reading the act that the legislature intended the corporation to contract or incur some debts and liabilities. The finding is that the moneys were expended for the use and benefit of the corporation. We must presume that such expenditures were for legitimate purposes, and for such as were authorized by the charter. The money may have been used in paying depositors to whom the corporation had "contracted a liability," or in paying rent of the building in which its business was conducted, or in paying wages of employees,

or overdrafts at other banks. If, under the act, there is any single thing for which the corporation may incur a liability for money paid out for its use, we must presume that such money was paid for such thing. The amendatory act of 1864 enlarged the powers of corporations formed under the act of 1862 so that they were authorized to do a commercial banking business as well as a savings bank business: Murphy v. Pacific Bank, 119 Cal. 339, 51 Pac. 317, 130 Cal. 542, 62 Pac. 1059. The court found that the appellant had been for more than twenty years last past engaged in the transaction of a general commercial banking business exclusively. The amendatory act of 1864 authorized the corporation to deal in or buy "bonds, securities, or evidences of indebtedness, public or private." This it could have done as a savings bank, in the absence of express power: Bank v. Barrett, 126 Cal. 413, 5 Pac. 914. If appellant's contention is correct, the money paid out for its use may have been for the purchase of bonds or evidences of indebtedness, and yet the corporation not be liable. Such an interpretation would be unreasonable, unjust and is not the law. It appears that the law of the state of Iowa in regard to savings banks provided: "That they shall not contract any debt except for deposits and the necessary expenses of managing and transacting their business." In discussing the above provision in Ubbinga v. Farmers' etc. Bank, 108 Iowa, 221, 78 N. W. 840, the court said: "Another provision of the same law expressly authorizes such a bank to 'discount, purchase, sell, and make loans on commercial paper, notes, bills of exchange, drafts, or any other personal or public securities.' . . . . It will be seen that the law authorizes the purchase of notes, and, if the bank has that power, it must have the right to make the agreement therefor; and it seems to us that it would be an unwarranted construction of the law to say that such an agreement might not be executory. Such a power would seem very essential in the ordinary transaction of business. It may be doubtful if the word 'debt' in the statute is intended to embrace more than an express obligation to pay money; but that we do not and need not decide. We are clearly of the opinion that the statute authorizing the purchase of notes gives the right to make the contract in question": See, further, Union Water Co. v. Murphy's Flat Fluming Co., 22 Cal. 628; McKiernan v. Len-

zen, 56 Cal. 63; Ward v. Johnson, 95 Ill. 215. If we were to assume that the appellant could not under the language of section 10, herein quoted, make a valid contract binding it to pay McDonald the money so paid out to its use, it would not change the result. There is no claim of fraud in the transaction, and not even a suggestion of any such thing. The plaintiff's assignor in good faith paid his money for the use and benefit of appellant. It received the benefit of such payment, and has never repaid the amount. The appellant not only consented to but requested the payment. This is not an action to enforce an executory contract, but to recover the amount paid, the benefit of which the appellant has received. The appellant, having requested the payment of the money for its use and benefit, cannot now be heard to refuse payment upon the ground that it cannot legally be bound by a contract to pay. The principles of natural justice and common honesty demand that it shall be held liable for the money so paid to it or to its use: Morse, Banks, 3d ed., sec. 750; Seeley v. Lumber Co., 59 Cal. 23; Main v. Casserly, 67 Cal. 127, 7 Pac. 426; Pauly v. Pauly, 107 Cal. 8, 48 Am. St. Rep. 98, 40 Pac. 29; Visalia etc. Light Co. v. Sims, 104 Cal. 332, 43 Am. St. Rep. 105, 37 Pac. 1042; Aldrich v. Bank, 176 U. S. 636, 44 L. Ed. 611, 20 Sup. Ct. Rep. 498.

It is claimed that under the latter clause of section 10 of the act of 1862 the assets of the corporation are security first to the depositors who are not stockholders, and that such depositors are to be paid in full before any payment shall be made to creditors. The portion of the section relied upon is as follows: "But the capital stock and the assets of the corporation shall be a security to depositors who are not stockholders, and the by-laws may provide that the same security shall extend to deposits made by stockholders." It is claimed that the cases of Murphy v. Pacific Bank, 119 Cal. 334, 51 Pac. 317, and same case, 130 Cal. 542, 62 Pac. 1059, support appellant's contention. We have examined those cases, and they simply hold, as the section reads, that, in the absence of any by-law, the assets of the corporation are to be applied first to the payment of depositors who are not stockholders in preference to those who are stockholders. The rights of creditors who are not stockholders was not an issue in said case on either appeal. But, although the question was not before the court for decision, the dicta in the

last appeal (130 Cal. 542, 62 Pac. 1059) clearly shows that the court was of the opinion that creditors who are not depositors should receive an equal pro rata with depositors who are not stockholders. The court said: "The controlling question of fact in the case is whether the said sum of $73,928.10 was loaned by said J. M. McDonald to the Pacific Bank, or whether it was a deposit. If it was a loan, the plaintiff was entitled to recover. If it was a deposit, he was not entitled to share in the dividends." While the opinion is not authority here, because the point was not involved, yet it is entitled to weight as showing the interpretation of the statute in the mind of the court. And we think the interpretation correct. There is nothing in the wording of the statute to show, or in any way indicate, that nonstockholding depositors should be preferred to general creditors. Unless such preference appears to have been in the mind of the legislature in passing the statute, we cannot infer such intent. Neither does it appear to us that any reason exists for such preference. The man who deposits $10,000 in the bank and the man who pays out to the use and benefit of the bank $10,000 are equally creditors. Each has parted with his coin upon the faith of the solvency of the bank. It is a hardship upon either to lose any part of the amount due him. Both being creditors of the same debtor, there is no reason why one should be preferred to the other. Equity would indicate that they be treated alike, and paid the same pro rata. In Fox's Appeal, 93 Pa. 406, it appears that the charter of the Kutztown Savings Bank provided "that for the security of the depositors the first trustees of the bank should provide a capital, which capital shall at all times be liable to the depositors for the amount of their deposit and the interest accruing thereon." The bank became insolvent, and on the distribution of the assets it was claimed that the depositors were entitled to the entire fund to the exclusion of all other creditors. The court held the position untenable, and in the opinion said: "The capital .... was evidently intended as a security for depositors, but not for them exclusively. It was designed to constitute a fund to be employed by the trustees for any of the legitimate purposes of the corporation. It might be loaned, or invested in property required for the use of the institution in conducting its business, or used in paying its creditors.

There is nothing in the charter to indicate that it was intended to be a special fund, separate and distinct from other funds of the institution, and for the exclusive benefit of depositors. . . . . We think that the depositors, as a class, had no exclusive right to the whole or any particular portion of the fund.''

It is not necessary to discuss any other points in the case. We advise that the judgment be affirmed.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.

We dissent: Beatty, C. J.; Temple, J.; Harrison, J.